[Argued July 15; decided August 2, 1897.]

## NORTHUP v. HOYT.

(49 Pac. 754.)

APPORTIONMENT OF MONEYS TO STATE TAXES.— The "moneys" referred to in section 2813, Hill's Ann. Laws, requiring county treasurers to pay over to the state treasurer in gold and silver coin the amount of state taxes charged to their respective counties out of the first of "such" moneys collected and paid in to them, means not only the proceeds of the tax levied for state purposes but also the proceeds of the taxes for general county purposes. That expression, however, does not include the result of any taxes levied for specific objects,—such as schools or roads.

STATUTORY CONSTRUCTION.— When a constitutional provision prevents a statute from applying to certain persons or in certain cases where it

apparently was intended to apply, the courts will not declare the statute unconstitutional but will hold that it was not intended to apply to such persons or cases.

STATE TAX A CORPORATE OBLIGATION OF COUNTY.—The obligation of a county to pay its portion of the state tax creates the relation of debtor and creditor between the county and the state, and the state becomes a preferred creditor to the amount of such tax, payable out of the general fund.

From Multnomah: E. D. SHATTUCK, Judge.

Mandamus proceeding by H. H. Northup, a taxpayer of Multnomah County, to compel Ralph W. Hoyt, county treasurer, to publish a notice calling in certain warrants for redemption. The particulars of the dispute are stated in the opinion. Defendant appeals from a peremptory order requiring him to publish the notice demanded.

MODIFIED.

For appellant there was a brief over the name of *Whalley & Muir*, with an oral argument by *Mr. John W. Whalley.*

For respondent there was a brief and an oral argument by *Messrs. Henry H. Northup*, in pro. per., and *Edward W. Bingham.*

MR. JUSTICE BEAN delivered the opinion.

By section 2465 of Hill's Ann. Laws, as amended in 1893 (Laws 1893, p. 59), the treasurer of each county is required to give notice, by publication in some newspaper printed or circulated in his county, that there are funds in his hands to redeem outstanding warrants indorsed, "Not paid for want of funds,"

whenever he has as much as $1,500 belonging to the county fund. On the eleventh day of June, 1897, the treasurer of Multnomah County had on hand $74,-514.86 to the credit of the general county fund, and $6,776.71 belonging to the road fund of his county, levied and collected under the provisions of section 4085, and, refusing to give such notice, this proceeding was commenced to compel him to do so. As a defense thereto he avers that there was at the time a balance of $157,661.67 due and owing from his county on the state taxes apportioned to it for the year 1896, which, under section 2813, he is required to pay in full before applying any of the moneys on hand to the payment and redemption of county warrants, and the sole question presented to the court for its decision is the proper construction of that section. It reads as follows: "On or before the first Monday of February in each year the several county treasurers in this state shall pay over to the state treasurer, in gold and silver coin, the amount of state taxes charged to their respective counties, which tax shall be paid out of the first of such moneys collected and paid in to the county treasurer; *provided, however,* that so far as the time of payment to the state treasurer is concerned, the same shall not apply to the county treasurers of the counties of Wasco, Umatilla, Baker, Union, Grant, Jackson, Coos, Curry, and Josephine, but the treasurers of said counties shall be required to pay over to the state treasurer on or before the first Monday of April in each year." The contention for the plaintiff is that this section contemplates that the payment by the county treasurer on account of state taxes charged

to his county shall be made from the moneys collected
on the levy for state purposes only, and that any other
construction thereof would be violative of section 3,
article IX, of the constitution, which declares that
"every law imposing a tax shall state distinctly the
object of the same, to which only it shall be applied."

Section 2813 comprises the entire act of October
21, 1864, and is amendatory of section 46 of the terri-
torial act of 1854 (Laws 1855, p. 441), which required
the county treasurer of each county in the territory to
pay over to the territorial treasurer, in gold and silver
coin, the amount charged to his county "out of the
first moneys collected" and paid into the county
treasurer.    Aside from the use of the word "state"
for "territory," the act of 1864 only changed the lat-
ter section by inserting the phrase "of such" before
the word "moneys," so as to make it read, "out of the
first of such moneys collected," and in extending the
time for the payment of state taxes by certain coun-
ties.    It is conceded that, as the law stood prior to the
act of 1864, its language is broad enough to require
the treasurer to pay the state taxes out of the first
moneys collected and paid into the county treasury,
without regard to the purpose for which they were
collected.    But the contention is that, by using the
words "of such" between the words "first" and
"moneys" in the amendatory act, the legislature in-
tended that such payment should be made from the
moneys collected for state purposes only, but this
seems to be a strained construction of the statute.
What office, if any, the words "of such" were designed
to perform is not by any means evident, unless, as is

very probable, it was to render more certain the necessity of paying the state taxes in gold and silver coin, and to settle the contention then prevailing as to the right to pay such taxes in treasury notes. See *Whiteaker* v. *Haley*, 2 Or. 128. But, however this may be, the section referred to requires the county treasurer of each county to pay over to the state treasurer by a certain time the entire state tax apportioned to and charged against his county, and it would be absurd to say that the legislature expected such payment to be made only from the money collected on account of what is commonly denominated the "state tax," when, in the very nature of things, it could not all be collected and paid into the treasury by the date named. Certainly, if an entire change in the policy of providing state revenue had been intended by the amendatory act of 1864, it would have been clearly expressed, and not left to mere inference and conjecture. The evident purpose of the amendatory act was to extend the time for the payment by certain counties of the state taxes charged against them, and not to change the fund out of which such payments should be made.

But we are unable to concur in the contention of the defendant that the payment of the state taxes charged against his county is to be made from the first moneys collected for taxes and paid into the county treasury, regardless of the purpose or object for which they were collected. The constitution declares that every law imposing a tax shall state the object of the same, to which only it shall be applied (section 3, article IX); and under this constitutional provision moneys received by taxation for one purpose cannot be law-

fully diverted by the legislature to any other purpose: *First National Bank* v. *Barber*, 24 Kan. 534; *Doty* v. *Ellsbree*, 11 Kan. 209. Thus moneys derived from a tax levied in pursuance of law for a specific object, as for the support of the common schools (section 2593, Hill's Ann. Laws), or for laying out, opening, or making and repairing county roads (section 4085 Id.), and the like, cannot lawfully be applied in payment of the amount due from the county to the state, any more than it could be applied to the payment of any other general obligation of the county. When the law declares the object for which a specific tax is levied, the constitution prohibits the application of the money derived therefrom to any other purpose, and, under the settled principles of construction, the moneys derived from such tax are as fully and effectually excepted from the operation of section 2813, Hill's Ann. Laws, as if the statute had contained an express provision to that effect. "The rule of construction universally adopted is," says the Supreme Court of New Hampshire," "that when a statute may constitutionally operate upon certain persons, or in certain cases, and was not evidently intended to conflict with the constitution, it is not to be held unconstitutional merely because there may be persons to whom or cases in which it cannot constitutionally apply; but it is to be deemed constitutional, and to be construed not to apply to the latter persons or cases, on the ground that courts are bound to presume that the legislature did not intend to violate the constitution." Opinion of the Justices of the Supreme Judicial Court, 41 N.

*31 Or.—34.*

H. 555; see, also, End. Int. St., § 179; *Clark* v. *Mayor,
etc., of Syracuse,* 13 Barb. 40; *Commonwealth* v. *Butler,*
99 Pa. St. 535. It is therefore from the first moneys
received, constitutionally applicable to the payment of
state taxes, from which such taxes are to be paid, and
not from funds derived from a tax which the county
is authorized to levy or collect for some special object.

Now, the general scheme of assessing and collect-
ing taxes in this state creates the relation of debtor
and creditor between the county and state for the
amount of state revenue apportioned to the county, so
that it becomes a liability against the county in its
corporate capacity, payable out of the funds received
for general county purposes, the same as any other
obligation: *State* v. *Baker County,* 24 Or. 141 (33 Pac.
530). And all taxes levied for state and county pur-
poses, when collected, belong to the county, and the
state becomes a preferred creditor to the amount of
the state revenue apportioned to it. So that while, for
convenience, the rate of taxation included in the gen-
eral county levy for the special purpose of raising
money with which to pay the county's obligation to
the state is designated as a state tax in the law and
upon the county records, it is, in fact, a county tax
levied for county purposes. The state does not deal
with the individual taxpayer, but its revenue is appor-
tioned to, and collected from, the various counties in
their corporate capacity, in proportion to the taxa-
ble property in each, and is payable by the county,
whether collected from the taxpayer or not; and there-
fore money raised from taxation for general county
purposes is not diverted from the object for which it

was laid, within the meaning of article IX, section 3, of the constitution, by being applied in payment of the amount of state revenue apportioned to the particular county. As we understand the law, upon the showing made by this record, the County Treasurer of Multnomah County should have given notice that he had on hand a certain amount of money belonging to the road fund applicable to the payment of warrants on such fund theretofore indorsed, "Not paid for want of funds," but no warrants drawn on the general fund of the county can be paid by him until after the state tax is paid in full. The judgment of the court will therefore be modified accordingly.

MODIFIED.