Argued and submitted November 7, 1990; reassigned April 13, decision of the Court of Appeals reversed; judgment of the circuit court affirmed May 21, 1993

Timothy S. CARRIER,
*Respondent on Review,*

*v.*

Wilbur and Fay HICKS,
dba Goble Tavern,
*Petitioners on Review.*

(CC 87-2112; CA A60563; SC S37366)

851 P2d 851

John L. Langslet, of Martin, Bischoff, Templeton, Ericsson, and Langslet, Portland, argued the cause and filed the petition for petitioners on review. With him on the petition was Julie Bolt.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, and McCann, Salem, argued the cause and filed a response for respondent on review.

PETERSON, J.

Fadeley, J., filed a dissenting opinion in which Unis, J., joined.

Unis, J., filed a separate dissenting opinion.

## PETERSON, J.

This is an appeal from a summary judgment in favor of defendant tavern operators, in a civil action to recover for personal injuries resulting from an automobile accident. Defendants allegedly served alcoholic beverages to Morgan, the driver of a car that struck plaintiff's vehicle, injuring him. Defendants' insurer became insolvent, and the Oregon Insurance Guaranty Association (OIGA) defended defendants against plaintiff's claim. The trial court granted defendants' motion for summary judgment. The Court of Appeals reversed. *Carrier v. Hicks*, 102 Or App 13, 793 P2d 329 (1990). We reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

Plaintiff was injured when the car in which he was a passenger was struck by a vehicle driven by Morgan, after Morgan left defendants' tavern. Morgan had $50,000 in liability coverage, which was divided among the injured parties. Plaintiff received $23,000 from that settlement. In August 1987, plaintiff filed a complaint in circuit court against defendants, alleging negligence and statutory tort liability for serving a visibly intoxicated patron.[1] At some point, defendants' insurance carrier became insolvent, and OIGA assumed its responsibilities to defend defendants, pursuant to ORS 734.510 *et seq.*

Plaintiff then filed an uninsured motorist claim against his own insurance company, Farmers Insurance Company (Farmers). As provided in plaintiff's insurance policy and ORS 742.504(10), the claim went to arbitration. The three-person arbitration panel awarded plaintiff $100,000 in special and general damages. That amount was less than the $250,000 limit of plaintiff's uninsured and underinsured motorist coverage. Plaintiff acknowledged satisfaction of his claim against Farmers, but expressly reserved his right to continue his action against defendants.

Plaintiff pressed this action. The trial court granted defendants' motion for summary judgment, apparently on the grounds that plaintiff had not exhausted his remedies as

---

[1] ORS 471.410(1) provides:

"No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

required by ORS 734.640(1)[2] and that the arbitration award constituted a full recovery of damages due to the harm caused by defendants and Morgan.

On plaintiff's appeal, the Court of Appeals, relying on its decision in *Mazorol v. Coats*, 102 Or App 8, 793 P2d 326 (1990), held that ORS 734.640(1) is not a defense to an action against a tortfeasor and reversed and remanded. *Carrier v. Hicks, supra*. In *Mazorol*, the court did not reach the issue of whether the plaintiff had exhausted his remedies pursuant to ORS 734.640(1). The *Mazorol* court stated:

> "As a consequence of plaintiff's mistaken belief that he had to proceed first against his own uninsured motorist coverage, he arbitrated his damages and was awarded less than the $100,000 limits of his uninsured motorist coverage. Defendant argues that because the policy limits were not exhausted, plaintiff has not exhausted his remedies, as required by ORS 734.640(1). Again, defendant is mistaken. Whether or when plaintiff pursues his uninsured motorist claim has nothing to do with plaintiff's right to bring an action against defendant. The existence or nonexistence of insurance or the financial status of insurers, indeed the whole OIGA scheme, has nothing to do with how a plaintiff may proceed against a tortfeasor." 102 Or App at 11.

The *Mazorol* court also concluded that allowing defendants, who were not parties to the arbitration, to assert the preclusive effect of the arbitrator's award would fail the fairness prong of the test for issue preclusion in that it would not be fair to plaintiff because plaintiff would be deprived of his right to jury trial. 102 Or App at 12. The court further noted that giving the arbitration award preclusive effect in a plaintiffs' action against an inadequately insured tortfeasor is not contemplated by the uninsured/underinsured motorist statutes. *Ibid.*

◼ The threshold issue is whether ORS 734.640 requires a claimant to exhaust the limits of all other insurance coverage before a claimant can recover from either a tortfeasor whose liability insurer is insolvent or from OIGA.

---

[2] ORS 734.640(1) provides:

"Any person who has a claim under an insurance policy against an insurer other than an insolvent insurer which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy."

The answer turns on an analysis of the OIGA statutes, ORS 734.510 to 734.710.

The OIGA statutes operate when an insured's liability insurer becomes insolvent. OIGA is an association of insurers created by the Oregon legislature to accumulate and administer funds to pay for the defense of insureds whose insurer becomes insolvent and to pay claims of injured claimants whose claims would have been within the coverage of the insolvent insurer's policy. ORS 734.510(4). The law was passed, among other reasons, to protect claimants and policyholders from loss arising from the insolvency of a liability insurer. ORS 734.520 states:

> "The purpose of ORS 734.510 to 734.710 is to provide for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, to provide an association to assess the cost of such protection among insurers and to assist in the liquidation of insurers as provided in this chapter."

The OIGA statutes outline how those goals are to be achieved. OIGA is obligated to pay "covered claims" against insolvent insurers, up to the limits of the insolvent insurer's limits, or $299,999.99, whichever is less. ORS 734.570(1).[3] "Covered claim" does not include "[a]ny amount due any reinsurer, insurer, insurance pool or underwriting association as subrogated recoveries or otherwise." ORS 734.510-(4)(b)(B). As will be discussed below, that is a significant exclusion from the coverage that would have been provided by the insolvent insurer.

The "functions" of OIGA are set forth in ORS 734.570 and include these:

— "to the extent of the association's obligation," to perform "the rights, duties and obligations of the insolvent

---

[3] ORS 734.510(4)(a) defines "covered claim" as

"an unpaid claim, including a claim for unearned premiums, that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable * * *."

insurer as if the insurer had not become insolvent," ORS 734.570(2);

&mdash; to assess members on a pro rata basis so that the association can meet its obligations, ORS 734.570(3);

&mdash; to investigate, "adjust, compromise, settle and pay covered claims to the extent of the association's obligation," ORS 734.570(4); and

&mdash; to pay covered claims, ORS 734.570(1).

Although the funds to operate OIGA come from assessments against member insurers — and all insurers that write insurance to which the law applies are members, ORS 734.510(7) — contributing members receive tax credits equal to their contributions, ORS 734.575(1). Surplus OIGA funds are deposited in the "General Fund of this state." ORS 734.575(2). Thus, in a real sense, state tax credits fund the OIGA program.

As pointed out above, a "covered claim" does not include amounts due other insurers "as subrogated recoveries or otherwise." ORS 734.510(4)(b)(B). Another OIGA statute, ORS 734.695, provides:

> "The insured of an insolvent insurer shall not be personally liable for amounts due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise up to the applicable limits of liability provided by the insurance policy issued by the insolvent insurer."

Those two statutes are significant, because they appear to negate provisions of the uninsured motorist (UM) and underinsured motorist (UIM) laws found in ORS 742.504, provisions that give UM and UIM carriers rights against the proceeds of any recovery against a tortfeasor.[4]

---

[4] ORS 742.504(11) is a UM/UIM statute and provides:

"In the event of payment to any person under this coverage:

"(a) *The insurer shall be entitled to the extent of [payment under the coverage] to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any uninsured motorist legally responsible for the bodily injury because of which such payment is made*;

"(b) *Such person shall hold in trust for the benefit of the insurer all rights of recovery which the person shall have against such other uninsured person or*

The aim and effect of the OIGA statutes is to make OIGA the carrier of last resort. It is not liable on or for subrogated claims of insurers, ORS 734.510(4)(b)(B). Its "insured" has a similar immunity, "up to the applicable limits of liability provided by the insurance policy issued by the insolvent insurer," ORS 734.695. Claimants must "exhaust [their] remedies" against all other insurers before they can claim OIGA funds, ORS 734.640(1).

That brings us to the dispositive statute, ORS 734.640, which in part reads as follows:

"(1) *Any person who has a claim under an insurance policy* against an insurer other than an insolvent insurer *which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy.*

"(2) Any person who has a claim that may also be recovered from one or more insurance guaranty agencies that perform functions similar to that of the association shall first seek recovery from whichever organization serves the place of residence of the insured * * *:

"* * * * *

---

organization because of the damages which are the subject of claim made under this coverage, *but only to the extent that such claim is made or paid herein*;

"(c) If the insured is injured by the joint or concurrent act or acts of two or more persons, one or more of whom is uninsured, the insured shall have the election to receive from the insurer any payment to which the insured would be entitled under this coverage by reason of the act or acts of the uninsured motorist, or the insured may, with the written consent of the insurer, proceed with legal action against any or all persons claimed to be liable to the insured for such injuries. *If the insured elects to receive payment from the insurer under this coverage, then the insured shall hold in trust for the benefit of the insurer* all rights of recovery the insured shall have against any other person, firm or organization because of the damages which are the subject of claim under this coverage, *but only to the extent of the actual payment made by the insurer*;

"(d) Such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

"(e) If requested in writing by the insurer, such person shall take, through any representative not in conflict in interest with such person, designated by the insurer, such action as may be necessary or appropriate to recover such payment as damages from such other uninsured person or organization, such action to be taken in the name of such person, but only to the extent of the payment made hereunder. In the event of a recovery, the insurer shall be reimbursed out of such recovery for expenses, costs and attorney fees incurred by it in connection therewith; and

"(f) Such person shall execute and deliver to the insurer such instruments and papers as may be appropriate to secure the rights and obligations of such person and the insurer established by this provision." (Emphasis added.)

"(3) *Any recovery* under ORS 734.510 to 734.710 from the association *shall be reduced by the amount of any recovery pursuant to subsections (1) and (2)* of this section." (Emphasis added.)

One manifest purpose of the OIGA law is to protect claimants and insureds. It provides protection that is similar but not identical to the protection claimants and insureds would have had if the liability insurer had not become insolvent. Insureds are defended by OIGA and protected up to the limits of their policy with the insolvent insurer or $299,999.99, whichever is less. Claimants are protected by those same provisions. But all of those protections have significant restrictions, some of which are discussed above.

The pivotal question in this case is the meaning of the phrase in ORS 734.640(1) that "[a]ny person who has a claim under an insurance policy [in this case, the claimant] which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy." Plaintiff's UIM claim against Farmers was a "claim under an insurance policy," an insurance policy with limits of $250,000. Plaintiff was awarded $100,000 on that claim under the UIM policy. The specific question is whether the words "must first exhaust the remedies under the [Farmers] policy" mean (1) that the Farmers policy *limits* must be "exhausted" before plaintiff can proceed against defendants or OIGA; or (2) that the *claim* against the policy, whatever its outcome, must be "exhausted" by completion; or (3) that claimant simply cannot *collect* from OIGA until the other claim is in process. The construction of this provision that is most consistent with the OIGA law is the first one — that the other insurance policy limits be exhausted before plaintiff can proceed against the insured of an insolvent insurer or against OIGA to recover damages covered by the OIGA plan.

The various parts of the OIGA law make several things clear. First and foremost is that the OIGA funds be available for the protection of claimants and insureds of insolvent insurers. Also important in the total OIGA scheme is that OIGA funds, generated by Oregon income tax credits, not be accessible or used until all other available insurance sources of payment have been used up. That is the underlying premise for ORS 734.510(4)(b)(B) (which excludes amounts

due other insurers from the definition of "covered claim" in the OIGA law) and ORS 734.695 (which immunizes the insured of an insolvent insurer from personal liability for amounts due any insurer up to the applicable limits of liability of the insolvent insurer, but not to exceed $299,999.99).

Taken together, the OIGA law in ORS chapter 734 and the UM/UIM law in ORS chapter 742 suggest that, if an injured claimant can receive *all damages to which he or she is legally entitled* from existing other UM or UIM insurance, the claimant would have no claim against either the insured of the insolvent insurer or against OIGA for the amounts within the OIGA coverage. The reason: The claimant has been compensated for the injuries sustained pursuant to a statutory procedure for determining fair compensation, a procedure designed to award the same amount that claimant would be legally entitled to receive from the insured in a civil action for damages. In this case, that statutory procedure is found in ORS 742.504(10), which provides that, if the UM or UIM carrier and the claimant do not agree as to the amount of damages that the claimant is *"legally entitled"* to recover from the uninsured or underinsured driver, the damages will be determined in an arbitration proceeding "under the arbitration laws of the State of Oregon and any judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

Insurance companies are pervasively regulated in Oregon in ORS chapter 731 to 752. The OIGA laws and UM and UIM laws are interrelated. The UM and UIM statutes provide a method for determining the amount of compensation to which a claimant may be "legally entitled to recover [as] damages * * * because of bodily injury." ORS 742.504(10). This protects the right of an injured person who has UM or UIM coverage to receive fair compensation, up to the limits of the UM or UIM coverage. The UM/UIM statutes also provide that the paying UM or UIM insurer has a claim against the uninsured motorist or other tortfeasor, a claim that may be asserted by the injured person, who holds any amounts so recovered "in trust." ORS 742.504(11). The OIGA laws, on the other hand, expressly immunize OIGA and partially immunize the insured of the insolvent insurer from the collection of any amounts due other insurers, including

UM and UIM insurers, up to the OIGA limits of coverage. ORS 734.690; ORS 734.510(4)(b)(B). This immunity extends to claims of injured persons held "in trust" for their UM or UIM carriers under ORS 752.504(11).

■　　The arbitration procedures contained in ORS 742.504(10) protect the claimant, who may recover from the UM or UIM insurer the amount to which he or she is *legally entitled* to recover as damages for the injury (up to the limits of the UM or UIM coverage). The statutes contained in ORS chapter 734 protect the insured of the insolvent insurer, and OIGA, from all such claims, up to the limits of the insolvent insurer's policy or the OIGA policy (whichever is less), consistent with the legislative plan.[5] In short, a claimant who received an award under ORS 742.504(10) for the bodily injury damages to which he or she is legally entitled, and is paid those amounts, is not entitled to proceed against OIGA or its insured for amounts within OIGA's coverage limits.

It follows from the foregoing that, in order to give effect to the legislative plan and to provide the protection that the legislature intended that claimants, OIGA, and the insured of the insolvent insurer have, the requirement in ORS 734.640(1) that the claimant "must first exhaust the remedies under such policy" means that *the limits* of any other applicable policy or policies must be exhausted before the claimant can assert a claim to recover damages covered by the OIGA plan against the insured of the insolvent insurer, or against OIGA. This is true because, if the recovery under the UM or UIM coverage is less than the UM/UIM policy limits, the recovery was less because the lesser amount was all that was necessary to make the claimant whole, *i.e.*, that claimant receive, as provided by ORS 742.504(10), the damages to which he was "legally entitled."[6] Here, because plaintiff

---

[5] In this opinion, we have repeatedly stated that the immunity of OIGA and the insured of the insolvent insurer from claims of claimant and other insurers exists up to the limits of the OIGA coverage. ORS 734.700; ORS 734.510(4)(b). Nowhere·in the record do we find what was the limit of the insurance provided by the insolvent insurance company. If the OIGA coverage is less than the amount of the UIM award, the insureds-defendants would not be entitled to immunity for amounts beyond the OIGA coverage. No party has raised this point. We therefore assume that the OIGA coverage is equal to or greater than the arbitration award.

[6] An injured plaintiff has but one claim for damages, a claim that can be asserted against all joint tortfeasors or against any one tortfeasor. Claimant can have only one recovery of the damages to which he is "legally entitled."

received the award of damages to which he was legally entitled, and that award did not exhaust the limits of the Farmers UM and UIM coverage, he is foreclosed from further pursuing his claim against defendants or OIGA to recover damages covered by the OIGA plan.

In *Mazorol v. Coats, supra,* 102 Or App at 11, the Court of Appeals stated: "The existence or nonexistence of insurance or the financial status of insurers, indeed the whole OIGA scheme, has nothing to do with how a plaintiff may proceed against a tortfeasor." That is not correct. The "whole OIGA scheme" is part of an extensive regulatory plan that is premised on the proposition that a claimant who would seek damages that otherwise are recoverable under other insurance coverage must exhaust that remedy before he or she is entitled to recover damages covered by the OIGA plan from the insured tortfeasor whose insurer is insolvent or from OIGA. The legislature aimed to make OIGA funds the funds of last resort.

In using the phrase "must first exhaust the remedies under such policy," the legislature did not have in mind the claim procedures of such policies. That would make the phrase an empty one, requiring only going through the procedures required by the other insurance policies. Instead, the legislature had in mind a complete plan, one that maximizes protection to the insured of an insolvent insurer, up to the OIGA limits, without intruding on the right of the injured person to recover the damages to which he or she legally is entitled, and yet protects OIGA funds so that they are limited to cases in which no other insurance is available to pay the claim.

 That brings us to plaintiff's final contention, that the arbitration proceedings referred to in ORS 742.504(10) impinge on plaintiff's right to a jury trial under Article I, section 17, of the Oregon Constitution. It provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

In *Molodyh v. Truck Insurance Exchange,* 304 Or 290, 744 P2d 992 (1987), the plaintiff challenged a provision of the fire insurance code, ORS 743.648, which set forth an

appraisal procedure required to be included in all fire insurance policies, and followed if the insurer and insured did not agree as to the amount of loss. The statute stated that the appraisers' award would "determine the amount of * * * loss." This court held that the statute could not deprive a nondemanding party of the right to jury trial. 304 Or at 299. The appraisal statute was held to be permissive as regards the demanding party and thus did not offend that party's jury trial rights. *Ibid.*

In the present case, the arbitration was conducted by agreement of the parties, not under statutory compulsion. That being so, the state has not deprived plaintiff of a jury trial; he voluntarily has agreed to forego one. Notwithstanding the arbitration provisions of ORS 742.504(10), under *Molodyh*, an unwilling UM or UIM claimant or insurer cannot be required to arbitrate the claim; any party can demand a jury trial of the UM or UIM claim. Our construction of the OIGA law and the UM/UIM law does not violate a claimant's Article I, section 17, right to a jury trial.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**FADELEY, J.,** dissenting.

This is an appeal from a summary judgment in favor of defendants, who operated a tavern. Plaintiff was injured by an automobile driven by a customer of the tavern, Morgan, soon after Morgan left defendants' establishment. Defendants allegedly had continued to serve Morgan intoxicants after he was visibly intoxicated.

The majority upholds a summary judgment granted to defendants. The summary judgment was granted after the tavern's insurance company became insolvent. That insolvency occurred before plaintiff's injury case got to the point of trial by jury. The summary judgment was founded on factors flowing from that insolvency, not on any issue concerning tort liability of defendants for plaintiff's injuries. The majority upholds the summary judgment by granting the defendants what the majority described as "immunity." 316 Or at 350.

The issues in this case may be stated in three questions:

(1) Do the statutory words "first exhaust the remedies under" an insurance policy, found in ORS 734.640, actually mean "first recover the maximum limits of coverage under" an insurance policy? The majority says "exhaust the remedies" means "exhaust the limits of coverage." I disagree.

(2) Do the statutory words *"[d]etermination* as to *whether the insured,* the insured's heirs or the insured's legal representative *is legally entitled to recover* such *damages and* if so, *the amount thereof, shall be* made by agreement between the insured and the insurer, or, in the event of disagreement, *by arbitration,"*[1] create a mandatory duty that requires arbitration? The majority appears to hold that the words do not require arbitration. The majority further appears to hold that the following statutory words, "such person and the insurer each agree to consider themselves bound and to be bound by any award made by the arbitrators,"[2] actually mean that the arbitrator's award is not binding. I disagree with those tortured meanings.

(3) Does a jury trial of a complaint on a contract against one's own insurance company satisfy the right to a jury trial constitutionally guaranteed to persons tortiously injured by third-party defendants? The majority says it does. 316 Or at 352. I disagree.

After plaintiff filed a negligence complaint against the tavern operators, defendants' insurer became insolvent. Plaintiff then filed a claim against his own insurance company under his own underinsured motorist policy contract with Farmers Insurance Company (Farmers). As required in plaintiff's insurance policy, and ORS 742.504(1)(a), plaintiff's claim went to arbitration.[3] In the meantime, plaintiff

---

[1] ORS 742.504(1)(a) (emphasis added).

[2] ORS 742.504(10).

[3] The record does not disclose whether the insurer or the insured demanded arbitration of the other. It does not support the conclusion that plaintiff demanded it. It most assuredly does not support the proposition that a waiver of plaintiff's constitutional right to a jury trial on a tort action against defendants occurred. No "intentional relinquishment of a known right" is even hinted at factually, let alone demonstrated.

shared a fractional part of Morgan's $50,000 total liability insurance coverage with two others injured in the same accident. At the arbitration hearing, liability was not disputed. Plaintiff's insurer, Farmers, stipulated to the amount of plaintiff's *special* damages only, most of which were Personal Injury Protection (PIP) and property damage payments already made to plaintiff by Farmers. The insurance arbitration panel awarded plaintiff a total of $100,000 in both general and special damages combined. That amount was less than the $250,000 limit of plaintiff's uninsured and underinsured contract with Farmers. Plaintiff, upon payment of the arbitration amount, reduced by the payments previously received from Farmers and the fractional share of the intoxicated driver's liability coverage, acknowledged satisfaction of his claim against Farmers on payment of the reduced amount but expressly reserved and continued to assert his right to continue his negligence action against defendants.

The statutory provisions relevant to this case are found in a 23-section comprehensive legislative act setting up and regulating the Oregon Insurance Guaranty Association (OIGA). Or Laws 1971, ch 616. That comprehensive act, as subsequently amended, is now found in ORS 734.510 to 734.710. Portions of that act relevant to this case are set out.

ORS 734.520 provides:

"The purpose of ORS 734.510 to 734.710 is to provide *for the payment of covered claims* under certain insurance policies to avoid excessive delay in payment and *to avoid financial loss to claimants or policyholders because of the insolvency of an insurer*, to assist in the detection and prevention of insurer insolvencies, to provide an association to assess the cost of such protection among insurers and to assist in the liquidation of insurers as provided in this chapter." (Emphasis added.)

ORS 734.570 provides in part:

"*The association shall*:

"(1) *Be obligated to pay covered claims* existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency. * * * [S]uch obligation shall include *only that amount of each* covered claim that is *less than $300,000.* * * * In *no event* shall the association *be obligated in an amount in excess of*

*the obligation of the insolvent insurer under the policy from which the claim arises \* \* \*.*

"(2) *Be the insurer* to the extent of the association's obligation on the covered claims and to such extent *have all the rights, duties and obligations* of the insolvent insurer as if the insurer had not become insolvent.

"(3) Assess member insurers the amounts necessary to pay the expenses incurred by the association in meeting its obligations \* \* \*." (Emphasis added.)

ORS 734.640 provides:

"(1) *Any person who has a claim under an insurance policy* against an insurer other than an insolvent insurer *which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy.*

"(2) Any person who has a claim that may also be recovered from one or more insurance guaranty agencies that perform functions similar to that of the association shall first seek recovery from whichever organization serves the place of residence of the insured, except that:

"(a) Recovery on first party claims for damage to property with a permanent location shall first be sought from whichever organization serves the location of the property; and

"(b) Recovery on workers' compensation claims shall first be sought from whichever organization serves the residence of the claimant.

"(3) *Any recovery* under ORS 734.510 to 734.710 from the association *shall be reduced by the amount of any recovery pursuant to subsections (1) and (2)* of this section." (Emphasis added.)

As can be seen, OIGA undertakes the obligation of a defendant's insolvent insurer but is entitled to offset any actual recovery from other insurers. To make that offset possible as a practical matter, other recoveries that will determine the amount of that offset first must be pursued.[4]

---

[4] Plaintiff does not contest the applicability of ORS 734.640(1) to his claim against defendants. Thus, defendants and OIGA are assured that the full amount of moneys received by plaintiff from other insurances, *i.e.*, the $100,000, will reduce the amount of damages that a jury may determine that defendants owe to plaintiff.

Relying on plaintiff's right to jury trial,[5] the Court of Appeals reversed the trial court's award of summary judgment[6] for defendants. The Court of Appeals held that the conditions precedent to a collection from the guaranty fund did not provide defendants a defense in plaintiff's tort action against defendants. *Carrier v. Hicks*, 102 Or App 13, 793 P2d 329 (1990).

I would affirm the Court of Appeals' decision, preserving that constitutional right to trial by jury (for both plaintiff and defendants), because that right should "remain inviolate" and "be preserved" just as the constitution says, and because the statutes do not say what the majority rules that they say, as the majority must so incorrectly rule in order

---

[5] Oregon Constitution, Article I, section 17, provides: "In all civil cases the right of Trial by Jury shall remain inviolate."

Oregon Constitution, Article VII (Amended), section 3, provides in part: "In actions at law * * * the right of trial by jury shall be preserved * * *."

[6] Defendants asserted three grounds for summary judgment against plaintiff. The three grounds were that arbitration and setting the amount of damages by arbitration preclude any further proceeding, that payment by Farmers under its contract with plaintiff was payment by defendants' joint tortfeasor, and that "exhaust the remedies" means obtain the full "limits of coverage" of other insurance. The three grounds and a short response to each follow:

"[P]laintiff has already received judgment and full payment for all of his injuries caused by Morgan through arbitration with his own uninsured motorist insurance carrier, precluding as a matter of law any further claim against defendants who could only be joint tortfeasors."

Plaintiff's insurance contract provided payment of amounts to be set by arbitration. Plaintiff's insurer can hardly be classed as a "joint tortfeasor."

"Additionally, plaintiff's claim is barred for failure to comply with ORS 734.640. * * * Under ORS 734.640, plaintiff was required to exhaust his remedies against all other insurers covering this claim before seeking recovery from the OIGA. However, plaintiff failed to meet this requirement as he did not and cannot exhaust the possible recovery under his own uninsured motorist policy, and his claim against defendants and the OIGA is thereby barred."

The "remedies" were exhausted. Plaintiff can do nothing further to recover more from his or any other insurance.

"The arbitration of his claim resulted in a decision that the *full value* of his claim was $100,000, substantially less than the $250,000 coverage available under the policy. Since plaintiff has been fully compensated for his injuries, and failed to exhaust the recovery available under the policy, he cannot now pursue OIGA and its insureds."

Given the right to trial by jury to determine liability and the amount of damages, one cannot say that arbitration settles the amount award as "full value" except as between insurer and insured on their contract. A jury trial of the claim against the tortfeasor, notwithstanding the insurance payment, is clearly contemplated by motor vehicle insurance statutes. ORS 742.504(11); ORS 742.538.

to evade the jury trial right. However, a proper construction of the relevant statutes would preserve both the statutory and constitutional protections for both injured claimants and defendant policy holders whose insurer becomes insolvent.

The majority's ground for denying plaintiff a jury trial is based on the majority's erroneous interpretation of statutes intended to assure plaintiffs and defendants that a substitute insurance coverage protection is available for harms caused by defendants even though their insurance company becomes insolvent and cannot pay either to protect defendants or to compensate injured plaintiffs.

Before turning to discussion of the three issues identified in the text of this dissent, it seems fair to point out that no authority whatever is cited by the majority. No authority is cited by the majority for either of its constructions of the statutes — to read "exhaust the remedies" to mean "recover the limits of coverage" and to read "shall be made * * * by arbitration" and "agree * * * to be bound" to be permissive and non-binding. Based on those unsupported interpretations, the majority then evades and cancels out plaintiff's right to a jury trial on his tort complaint citing only one authority, *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987). That case interpreted ORS 743.648[7] (now 742.232) relating to fire insurance law and holding that the plaintiff was entitled to a jury trial on a contract claim against his own fire insurance company. *Molodyh* did not involve either a tort claim or the statutes relevant in this case.

## EXHAUST THE REMEDIES

There is nothing in the statutory text to suggest either that "remedies" means "limits of coverage" or that "exhaust" means "obtain the potential maximum." Immediate context is also to the contrary. The section in which the phrase "first exhaust the remedies" is found includes, as subsection (3), a reference to "any" recovery and mandates a reduction "by the amount of any recovery" from one's own or any other insurance policy. ORS 734.640(3). If the legislature intended "any recovery" to mean "the maximum limits of coverage," it would have said so in subsections (1) or (3). It is

---

[7] A provision whose ancestry may be in admiralty, not common law.

not logical to refer to "any recovery" in one part of a statutory section while saying that only the recovery of the maximum policy limits satisfies the requirement of another part of the same section that must be satisfied in order for there to be a possibility of any reduction at all under the "any recovery" provision.

Nor do our cases construing the term "exhaustion of remedies" provide the majority any foundation for its strained interpretations.

In *Rose v. Etling*, 255 Or 395, 398, 467 P2d 633 (1970), this court approved the definition of "remedies" as the "means to enforce a right." That case held that a motion for change of venue was a defendant's "remedy" to enforce a "right" to a change of venue and that a contract provision waiving that remedy was invalid because the remedy was granted by law. *Id.* at 399-400.

Statutory definitions for use in commercial transactions state that " 'remedy' means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal" and that " 'rights' includes remedies." ORS 71.2010(34) and (36).

In *Shockey v. City of Portland*, 313 Or 414, 422, 837 P2d 505 (1992), *cert den* 123 L Ed 2d 444 (1993), this court has recently affirmed this court's long-held view that an exhaustion of remedies requirement is fulfilled, so that the next step may be taken to gain relief, when the required procedure has been "followed without success."[8]

"As previously stated, plaintiff appealed his termination to the City of Portland Civil Service Board * * * [which] found in plaintiff's favor, reinstated plaintiff with back pay and restored seniority and benefits. In *Miller v. Schrunk*, 232 Or 383, 388, 375 P2d 823 (1962), this court held:

" 'When any charter or statute sets out a procedure whereby an administrative agency must review its own prior determination, that procedure must be followed. Judicial review [by way of writ of review] is only available after the procedure for relief within the administrative

---

[8] This view is just the opposite of that taken by the majority in this case. It holds that a failure to obtain the maximum relief potentially possible is a failure to exhaust the remedy.

body itself *has been followed without success.* (Emphasis added.)'

"Plaintiff's success before the Civil Service Board made writ of review not only unnecessary, but unavailable." (Emphasis in original.)

In *Jackson v. Dept of Rev.*, 298 Or 633, 635, 695 P2d 923 (1985), the Department of Revenue moved to dismiss an action in the Oregon Tax Court on the ground that plaintiffs-taxpayers had failed to "exhaust administrative remedies." The tax court dismissed because of that failure and this court affirmed. This court relied on ORS 305.275(4), which provided in part that:

"[N]o person shall appeal to the Oregon Tax Court or other court * * * unless he *first exhausts the administrative remedies* provided him before the department."

Plaintiff-taxpayers had filed their request for administrative relief after the statutory time period for doing so of 90 days had run. Thus, there was no timely attempt to obtain any administrative remedy and, accordingly, no appeal was possible. The court explained exhaustion in terms of what was *not* exhaustion, holding: "Administrative remedies are not exhausted *unless* applicable procedures, prescribed by statute or rule, have been satisfied." *Id.* at 637 (emphasis added). In the present case, plaintiff timely employed the procedure, pursued the available remedy to its end, obtained an offset against OIGA and defendants' liability of $100,000, and could do no more.

In *Zollinger v. Warner*, 286 Or 19, 25, 593 P2d 1107 (1979), this court stated that the phrase exhaustion of administrative remedies "properly applies where one seeks prematurely to obtain judicial review of or judicial intervention * * * without waiting to see whether the agency will take the desired action." That is not this case. Plaintiff has done all he can to recover. The arbitration award amount is final here. ORS 36.350, ORS 36.355, and ORS 36.365.

Legislative history does not support the majority's interpretation. The only purpose for this provision mentioned during legislative consideration of the Oregon Insurance Guaranty Association Act was to prevent a double or duplicate recovery. The requirement that recovery from one's

own insurance or other insurance be offset against the recovery from OIGA on behalf of a defendant assures, of course, that no duplicate recovery will occur.

Introduced and adopted in the 1977 legislative session as Senate Bill 63, amendments to the OIGA comprehensive act included amendments to ORS 734.640. Or Laws 1977, ch 793, § 10. This is the source of the language requiring a claimant to first exhaust the remedies under the claimant's own insurance policy. On final adoption by the House, Representative Vian explained that this section prevents "double recovery." House Floor Debate, 6-30-77, tape 37, side 1. Previous consideration in the Senate confirms that the intent was to prevent double recovery, not what the majority asserts by changing the words of the statute. The Senate Labor, Business and Consumer Affairs Committee sent Senate Bill 63 to the Senate floor accompanied by a "Measure Intent Statement" which stated that the bill "prevents double recovery by a claimant against OIGA and another insurance policy."

Nor do cases from other states having statutes like subsections (1) and (3) of ORS 734.640 support the majority. *See, e.g., Ala. Ins. Guar. Ass'n. v. Colonial Freight*, 537 So 2d 475, 476 (Ala 1988) ("The trial court correctly held that the appropriate amount by which to reduce Colonial Freight's reimbursement from AIGA [the state insurance guaranty association] was $25,000, the amount of [an uninsured motorist policy claim] *recovery*, and not $50,000, the full coverage under her policy. The language of the statute clearly refers to 'recovery' and not to the full amounts potentially payable under the uninsured motorist policy." (Emphasis in original.)). Oregon's statute refers to "any recovery," as mentioned previously.

"SHALL BE * * * BY ARBITRATION,

AGREE TO BE * * * BOUND"

The majority ignores the above words found in statutes, referred to *post*. To replace them, the majority says that, under *Molodyh*, "any party can demand a jury trial," 316 Or at 352. The majority must distort the positive law, found in

statutes not involved in *Molodyh*,[9] in order to make that statement. The statutes involving recovery from one's own uninsured motorist insurance that are relevant to the present case follow.

First, ORS 742.504 provides for arbitration between insured and insurer to be required by all uninsured and underinsured policies. It provides in part:

> "*Every* policy required to provide the coverage specified in ORS 742.502 *shall provide* uninsured motorist coverage which in each instance is no less favorable in any respect *to the insured or the beneficiary* than if the following provisions were set forth in the policy." (Emphasis added.)

. Subsections of that statute mandate that compulsory, binding arbitration decide both liability and amount of damage. The arbitration is made mandatory by ORS 742.504(1)(a), which provides in part:

> "Determination as to whether the insured, the insured's heirs or the insured's legal representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured and the insurer, or, in the event of disagreement, by arbitration."

The arbitration award is made binding by ORS 742.504(10), which provides in part:

> "If any person making claim hereunder and the insurer do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this coverage, then, in the event the insured or the insurer elects to settle the matter by arbitration, * * * [s]uch person and the insurer *each* agree to consider themselves bound and to be bound by any award made by the arbitrators pursuant to this coverage in the event of such election." (Emphasis added.)

In the face of these statutes, the majority holds: "[A]n unwilling UM [uninsured motorist] or UIM [underinsured motorist] claimant or insurer cannot be required to arbitrate the claim." 316 Or at 352. To arrive at that holding,

---

[9] Only *former* ORS 743.648 (now 742.232), relating to fire insurance policies, was involved.

and yet deprive plaintiff here of a jury trial against the tavern that allegedly served additional drinks to an already intoxicated driver, the majority fictionalizes:

> "In the present case, however, the arbitration was conducted by agreement of the parties, not under statutory compulsion." 316 Or at 352.

Based on those fictional facts, the majority concludes:

> "[T]he state has not deprived plaintiff of a jury trial; he voluntarily has agreed to forego one." 316 Or at 352.

The majority then says, of *Molodyh*:

> "The * * * statute was held to be permissive as regards the demanding party and thus did not offend that party's jury trial rights."[10] 316 Or at 352.

With regard to the plaintiff in *Molodyh*, who brought an action on the insurance contract against his own insurer, not against a third-party tortfeasor, this court held:

> "If plaintiff wanted * * * insurance, he had to take it on the terms dictated by the legislature. The legislature cannot itself 'waive' plaintiff's right to a jury trial by requiring the inclusion of such provisions in insurance policies." *Molodyh v. Truck Insurance Exchange, supra*, 304 Or at 295.

Applying that conclusion to the language of the arbitration statute in this case, and to the actual facts in the record, plaintiff was entitled to a jury trial on his tort claim against defendants. The legislative requirement of arbitration between insured and insurer cannot and did not "waive" plaintiff's right to trial by jury against the tortfeasor. The majority distorts positive law, found in the statutes considered above, as well as extending without explanation the applicability of *Molodyh*, a contract action, to this tort case.

## WARNING TO PRACTITIONERS, LOSS OF JURY TRIAL

To determine the effect of the majority's reading of *Molodyh* to this tort case, we should consider that case in detail. In *Molodyh*, this court said:

---

[10] The majority notes that the reverse was true as to a nondemanding party, stating: "This court held that the statute could not deprive a nondemanding party of the right to jury trial." 316 Or at 352. That, of course, shows the crucial nature of the fictionalized facts of "agreement" to the majority holding.

"Defendants argue that plaintiff waived his right to a jury trial by voluntarily entering into the insurance contract containing the ORS 743.648 appraisal provision. We find this argument unpersuasive. The appraisal provision is required in all fire insurance policies sold in Oregon. Plaintiff did not bargain for or consent to its inclusion. If plaintiff wanted fire insurance, he had to take it on the terms dictated by the legislature. The legislature cannot itself 'waive' plaintiff's right to a jury trial by requiring the inclusion of such provisions in insurance policies.

"* * * * *

"Plaintiff here has assumed that this case was an action on a contract and therefore carried with it the right to trial by jury. This assumption is not unfounded because a jury trial on factual issues concerning an insurance policy long has been established practice in this country.

"* * * * *

"Finally, defendants ask us to adopt the reasoning of other jurisdictions which have held that an insured gives up his or her right to have a jury decide only the amount of loss while retaining the right to a jury trial on all other issues.

"* * * * *

"This reasoning is unpersuasive. Our constitution provides that the right to jury trial 'shall remain inviolate.' This right includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process. In many instances, the amount of the loss will be the only disputed issue.

"* * * * *

"Because one party to the contract may unilaterally, by written demand, make the appraisal process mandatory, we must next determine whether the resulting appraisers' award is binding and conclusive on the parties. *If it is binding, it runs afoul of Article I, section 17.* (Emphasis added.)

"* * * * *

"When a constitutional provision, such as Article I, section 17, prevents a statute from applying to persons or situations to which the statute may have been meant to apply, this court will not declare the statute unconstitutional. Instead, we will hold that the statute was not intended to apply to the persons or situations in question. *Northup v. Hoyt*, 31 Or 524, 49 P 754 (1897). In doing so, we act with the

presumption that the legislature did not intend to violate the constitution. 31 Or at 529. To save the statute at issue here, ORS 743.648, from running afoul of Article I, section 17, we therefore construe the provision as non-binding in respect of the non-demanding party.

"Under this interpretation of ORS 743.648, a party that demands appraisal will be deemed to have consented voluntarily to the appraisal process and the appraisal award will be binding upon that party.

"* * * Plaintiff continued to assert his right to a jury trial throughout this litigation. Consequently, plaintiff remains entitled to a jury trial on this issue." 304 Or at 295-300. (Heading omitted; emphasis added.)

ORS 734.520 states that the purpose of the comprehensive OIGA law is to provide a two-way protection, covering both claimants and policyholder-defendants. That Act's purpose "is to provide *for the payment of covered claims * * * to avoid financial loss to claimants or policyholders because of the insolvency of an insurer*." (Emphasis added.)

The majority holding however protects only the policy holders, not the tort claimant allegedly injured by them. The warning here is that, in keeping the loss off the tortfeasor and OIGA, the majority has taken away the injured person's right to trial by jury. The majority says that this loss follows from participating in arbitration and that the statutes do not require arbitration between insured and insurer. This unexpected and unintended loss of jury trial is now in effect by majority vote of this court. Warning, practitioners, warning.

I dissent. Unis, J., joins in this dissent.

## APPENDIX

Examples —

The majority's interpretation — that the limits of coverage of a plaintiff's own insurance must be exhausted before the plaintiff may proceed against a negligent defendant represented or defended by the OIGA — produces untoward results. To demonstrate those results, I consider three separate cases. In each case, it is assumed that a plaintiff suffers what a jury would find were $200,000 in damages. It is further assumed that defendant, who is negligent and causes plaintiff's injuries, has $300,000 of liability coverage but that his insurer becomes insolvent after defendant's negligence causes plaintiff's injuries.

> *Case One.* A plaintiff purchased and paid the higher premium for ten times the minimum uninsured or underinsured coverage required by law, *i.e.*, $250,000 of coverage. Plaintiff arbitrates with his own company under his contract, and is awarded $100,000. Under the majority decision, the self-purchased additional coverage limit amounts prevent recovery from the defendant who caused the harm (and whom the majority would make partially "immune"). No jury trial against defendant is available, and no recovery from either defendant or OIGA is possible.

> *Case Two.* A plaintiff paid for $25,000 of coverage, the bare minimum required by law. Plaintiff arbitrates and the award sets the value of the loss at $100,000. The plaintiff would be entitled to recover $175,000 from the OIGA and defendant, that being the difference between his maximum limits of coverage and the $100,000 awarded by the arbitration.

> *Case Three.* Plaintiff, who paid no premium and purchased no automobile liability insurance could recover up to the full $200,000 from OIGA (paying for defendants) even though he has not paid any premiums and thus has not, even indirectly, contributed to the OIGA fund.

According to the majority, defendant is partially "immune" in case one, because plaintiff purchased extra insurance, but not so in cases two and three. 316 Or at 349. Where is the rhyme or reason for that?

**UNIS, J.,** dissenting.

I join in the dissenting opinion of Justice Fadeley.

The legislature provided in ORS 734.640(1) that plaintiff must exhaust his remedies under other insurance policies before pursuing a claim under Oregon Insurance Guaranty Association (OIGA). Exhausting a remedy means that a claim is pursued to its final conclusion, without respect to the ultimate result. If the legislature had intended that plaintiff must exhaust the limits of the uninsured motorist coverage of his insurance policy before pursuing a claim under OIGA, the legislature would have said so.