## ROMAN CATHOLIC ARCHBISHOP OF THE ARCHDIOCESE OF PORTLAND IN OREGON,
*Appellant,*

*v.*

## OREGON INSURANCE GUARANTY ASSOCIATION,
*Respondent.*

(C941084CV; CA A91531)

945 P2d 645

Peter A. Ozanne argued the cause for appellant. With him on the briefs were Thomas V. Dulcich, Steve V. Morasch and Schwabe, Williamson & Wyatt.

John L. Langslet argued the cause for respondent. With him on the briefs were Julie K. Bolt and Martin, Bischoff, Templeton, Langslet & Hoffman.

Before Riggs, Presiding Judge, and Landau, Judge, and Joseph, Senior Judge.*

JOSEPH, S. J.

---

* Joseph, S. J., *vice* Leeson, J.

## JOSEPH, S. J.

Plaintiff brought this declaratory judgment action against the Oregon Insurance Guaranty Association (OIGA) to determine OIGA's obligation to pay a claim against an insolvent insurer pursuant to ORS 734.570(1). Plaintiff appeals from the judgment in favor of OIGA, challenging the trial court's decision on cross-motions for partial summary judgment, detailed below. By a cross-assignment of error, OIGA challenges the trial court's denial of its motion for partial summary judgment on the issue of its entitlement to a setoff for amounts that plaintiff had received from other insurers.

The case arises from plaintiff's settlement of a sexual abuse claim. A priest employed by plaintiff sexually abused a young parishioner from 1974 to 1988. Plaintiff paid $446,684 to settle the claim and $95,897 in defense costs.[1] During the period of the abuse plaintiff was insured by various insurers; coverage was arranged in tiers, each requiring payment only after the lower tier was exhausted. For each one-year policy period, plaintiff maintained a primary policy with the Underwriters at Lloyd's, London (Lloyd's) and an excess policy with another insurer. The Lloyd's policies had a limit of $200,000 and included a self-insured retention, in effect a deductible, which required plaintiff to pay the first $50,000 of incurred liability and Lloyd's to pay the balance, up to $150,000. The excess insurer would have to pay only if losses during a policy period exceeded $200,000.

After paying the abuse settlement, plaintiff recovered $150,000 from Lloyd's and $20,000 from an excess insurer for a coverage period not involved in this case. Midland Insurance Company (Midland) had provided excess coverage from July 1, 1974, to July 1, 1978. When Midland was declared insolvent, OIGA assumed its obligations under ORS 734.510 *et seq.* By this action, plaintiff seeks to recover

---

[1] The primary insurer "arbitrarily," in the word of the trial court, used the date of June 15, 1977, as the occurrence date in paying the settlement. Nothing else in the record indicates any effort by the parties to the settlement to allocate damages to any particular year or years.

OIGA's $300,000 statutory maximum under the Midland policy.

■ In the summary judgment phase of this case, plaintiff argued that the underlying claim against it constituted only one "occurrence" under its insurance policies. Therefore, only one retention and one primary insurance layer needed to be paid in order to reach Midland's excess insurance coverage. On the other hand, OIGA argued that an "occurrence" took place in each policy year during the period of the abuse; therefore, plaintiff and Lloyd's were obligated separately each year for the retention and the primary limits. If OIGA is correct, Midland's excess coverage for which OIGA is liable was never brought into play. The trial court agreed with OIGA, on the cross-motions and at trial.[2]

Plaintiff's single assignment of error is directed at the trial court's interpretation of language in *both* Lloyd's and Midland's policies. However, in our view, only Lloyd's language is in issue. Under ORS 734.570(1), OIGA is responsible for Midland's liability (up to the statutory limitation); but if, under a proper interpretation of Lloyd's policy, Lloyd's liability was not exhausted, Midland's policy is not implicated. ORS 734.640(1); *Carrier v. Hicks*, 316 Or 341, 348, 851 P2d 581 (1993). It is undisputed that plaintiff has not recovered the limits of Lloyd's coverage in each of the years when the abuse occurred; it has recovered under only one year of Lloyd's coverage and under another, 1980-81 policy from a different insurer.

■ Ordinarily, we review the interpretation of an insurance policy for errors of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). However, OIGA contends that plaintiff is precluded from relitigating the meaning of Lloyd's policy by the decision of the Ninth Circuit Court of Appeals in *Interstate Fire & Cas. Co. v. Archdiocese*, 35 F3d 1325, 1329-30 (1994), *on remand*

---

[2] A trial was ordered because the judge hearing the summary judgment motions believed that there was an issue of fact about damages in the various coverage periods, but the trial judge found that neither party had proved a basis for allocation of damages. The trial court held: "Given the facts of this case, it is appropriate to apportion the damage on a pro rata basis over all the policy years in which the abuse occurred." Judgment was therefore entered for OIGA.

899 F Supp 498 (D Or 1995), which involved plaintiff and the same policy language in the same Lloyd's policy and held that a course of sexual abuse over several years by another employee was not a single occurrence but a separate occurrence in each year.[3]

■ As the Supreme Court held in *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990), issue preclusion arises when an issue has actually been litigated and finally determined against a party. Given our determination that only Lloyd's policy language is now in issue, we have no doubt that the *Drews* issue preclusion standards are satisfied. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1990).

In both cases, the issue of the meaning of Lloyd's policy language was the same; that issue was actually litigated and was essential to the decision on the merits; plaintiff had a full and fair opportunity to be heard on the issue; plaintiff was a party to the previous decision; and the case was the type of proceeding that could give rise to issue preclusion. We also note that the facts in *Interstate Fire & Cas. Co.* were essentially the same: sexual abuse over several years by an employee of the plaintiff. Although the language of the two policies discussed in *Interstate Fire & Cas. Co.* differed in ways not present here, the language with which we are concerned in the Lloyd's policy is identical in both policies and the differences between the two policies involved in *Interstate Fire & Cas. Co.* were not determinative in that decision. The decisive issue in that case and this one is the same: Under the Lloyd's policy language[4] was there a single occurrence or a series of occurrences in each policy year? By holding plaintiff precluded, we should not be understood as accepting all of the

---

[3] The Ninth Circuit's analysis was informed by the Oregon Supreme Court's answers to questions certified to it by the federal court concerning interpretation of Oregon insurance policies. *Interstate Fire & Cas. Co. v. Archdiocese of Portland*, 318 Or 110, 864 P2d 346 (1993). The trial court treated the Ninth Circuit's decision as "controlling."

[4] The policy defines "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, or damage to property during the policy period."

Ninth Circuit's analysis or, even, were it not for issue preclusion, its result. Issue preclusion is just, and only, that: preclusion from relitigating the issue in this case that was decided against it in the earlier case.

We need not decide OIGA's cross-assignment of error.

Affirmed.