Argued and submitted May 10, affirmed December 22, 1982

In the Matter of the Compensation of
Robert A. Parker, Claimant.

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner,*

*v.*

PARKER,
*Respondent.*

(WCB No. 80-00711, CA A23246)

656 P2d 335

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for petitioner.

Milo Pope, Mt. Vernon, argued the cause for respondent. With him on the brief was Kilpatricks & Pope, Mt. Vernon.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

SAIF seeks judicial review of a determination by the Workers' Compensation Board that SAIF was liable for all future medical expenses on respondent's claim, because it did not retain a reserve for estimated future medical expenses from the proceeds of a third-party claim pursuant to ORS 656.593(1)(c).[1] We affirm.

In October, 1977, claimant sustained a serious industrial accident. He elected to pursue his remedy against a third party (ORS 656.576 to 656.595) and was successful. Out of the gross settlement, SAIF deducted and paid: (a) attorney fees and costs incurred on the third-party claim; (b) a sum equal to 25 percent to claimant *(see* n 1, *supra),* and (c) SAIF's expenditures on respondent's claim up to that time. SAIF did not estimate claimant's future medical

---

[1] At the time of claimant's injury, ORS 656.593 provided in relevant part:

"(1) If the worker or his beneficiaries elect to recover damages from the employer or third person, notice of such election shall be given the paying agency by personal service or by registered or certified mail. The paying agency likewise shall be given notice of the name of the court in which such action is brought, and a return showing service of such notice on the paying agency shall be filed with the clerk of the court but shall not be a part of the record except to give notice to the defendant of the lien of the paying agency, as provided in this section. The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"(a) Costs and attorney fees incurred shall be paid, such attorney fees in *no event to exceed the advisory schedule of fees established by the board for* such actions.

"(b) The worker or his beneficiaries shall receive at least 25 percent of the balance of such recovery.

"(c) *The paying agency shall be paid and retain the balance of the recovery, but only to the extent that it is compensated* for its expenditures for compensation, first aid or other medical, surgical or hospital service, and *for the present value of its reasonably to be expected future expenditures for compensation* and other costs of the worker's claim under ORS 656.001 to 656.794 exclusive of any compensation which may become payable under ORS 656.273 or 656.278.

"(d) The balance of the recovery shall be paid to the worker or his beneficiaries forthwith. Any conflict as to the amount of the balance which may be retained by the paying agency shall be resolved by the board." (Emphasis supplied.)

The present statute provides for distribution of at least 33-1/3 percent of the recovery to the worker or his beneficiaries under subsection (1)(b).

expenses; instead it distributed the entire balance to claimant on June 15, 1979, advising claimant's counsel by cover letter:

> "Please advise your client that the sum of $44,417.57 will operate as a bar to future compensation in this claim, exclusive of such rights as the claimant is entitled under ORS 656.273 and ORS 656.278."

On the third-party settlement distribution form, the following language was typed:

> "Balance to claimant (this will operate as a bar to further compensation in this claim, exclusive of his rights under ORS 656.273 and ORS 656.278) $44,417.57."

Less than a week later, claimant submitted a bill to SAIF for medical services related to his industrial injury. After SAIF refused to pay, claimant requested a hearing. Both the referee and the Board ruled that SAIF was required to pay the disputed bill as part of the future medical expenses.

In relevant part, the Board's order states:

> "We adopt as our own the following portions of the Referee's order, with which we fully agree:

> " 'One of the purposes of the Workers' Compensation Law is to insure that a claimant will receive continued and adequate medical care, reasonable and necessary because of his industrial injury. This is the purpose of Section ORS 656.245. Simply because the Fund does not wish to encumber itself with additional bookkeeping, it is not relieved of its duty to ascertain that such provisions are made.

> " 'In this particular case, claimant sustained a very serious injury and it is reasonable and logical to anticipate continued medical treatment. While it is true that in this particular case that claimant received a large settlement, and substantial funds beyond the amount paid to him or on his behalf by the Fund, that is not to say that the claimant would always have this money, with which to pay future medical expenses. As the carrier, the Fund is duty-bound, under the provisions of the statute, to retain sufficient funds, for this purpose, rather than placing the burden on the claimant to retain them.

> " 'In addition, while the statute contemplates that the Fund shall retain sufficient monies for future medical expenses, it makes no provision for incorrect estimating.

By the silence on this point, it appears that if the Fund does not retain sufficient monies, any additional expenses still must be paid under ORS 656.245. Under the Fund's argument, the claimant would be responsible. For example, if the Fund retained $2,000.00, and the claimant, over a period of years, incurred $3,000.00 worth of. 245 billings, would he or she then have to pay the difference? What if the balance of the settlement was only $2,000.00 and the Fund kept it all? Would claimant then be responsible? I think not, and the same logic must apply in this case. The Fund elected to retain zero dollars. This, then, was its estimate as to future medical expenses, and any amount over and above the figure remains its responsibility to pay.'

" '* * * * *'

"We appreciate there are significant practical difficulties in determining amounts to be retained by a carrier for the present value of its likely future claim costs. See *Leroy R. Schlecht,* WCB Case No. 79-06304 (decided this date). But such practical difficulties cannot alter the statutory mandate that a reserve for future claim costs 'shall' be retained, ORS 656.593(1)(c); nor justify SAIF's contrary 'policy.' We conclude that unless a carrier retains such a reserve from a third party settlement or judgment, the carrier is responsible for all future claim costs just as if there had been no third party settlement or judgment. To the extent any of the above-cited Board decisions are inconsistent, they are overruled."

We concur in the result reached by the Board. Under the statutory scheme,[2] neither a worker's election to pursue a third-party recovery nor the worker's receipt of his share of the proceeds recovered absolves the carrier of its duty to provide continued medical services. At the time of the third-party settlement distribution (June, 1979), ORS 656.245(1) provided:

"(1) For every compensable injury, the direct responsibility employer or the State Accident Insurance Fund shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including

---

[2] We analyze the statutory scheme as of the time of the October, 1977, injury. ORS 656.202(2). The current statutes, although amended in 1981, are substantially similar with respect to the issues raised here.

> such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services."

That section describes in unqualified terms the ongoing duty of the insurer to provide continuing medical services for compensable injuries.[3]

An injured worker is given the right to pursue a recovery against a negligent third party by ORS 656.154;[4] the incidents of that right are governed by ORS 656.576 to 656.595. There is nothing in those sections or in any other section of ORS chapter 656 specifically relieving the insurer of its obligation to furnish medical services under ORS 656.245 when there has been an election to pursue a third-party recovery. ORS 656.580(1) seems to suggest that the manner and amount of benefits "paid" to the worker might change on recovery of damages in a third-party action:

> "The worker or his beneficiaries, as the case may be, shall be paid the benefits provided by ORS 656.001 to 656.794 in the same manner and to the same extent as if no right of action existed against the employer or third party, until damages are recovered from such employer or third party."

Medical services, unlike disability payments, however, are not benefits that are "paid" to the worker, although they are a part of the compensation to which an injured worker is entitled under the Act. More significantly, the thrust of ORS 656.580(1) is not to authorize termination of any benefits after recovery of damages, but to ensure that benefits paid before the recovery be treated as if no election had taken place and, under subsection (2), to give the paying agency a lien for those expenditures.

---

[3] In 1981, the following sentence was added to ORS 656.245(1):

"* * * The duty to provide such medical services continues for the life of the worker." Or Laws 1981, ch 535, § 31.

[4] ORS 656.154 provides:

"If the injury to a worker is due to the negligence or wrong of a third person not in the same employ, the injured worker, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person."

The fact of election does not appear from the statutory scheme to have been intended by the legislature to terminate medical benefits. Actually, it is not a true election of remedies as that term is commonly used. If the worker does not proceed against the third-party wrongdoer, his election not to do so operates as an assignment of his claim to the paying agency, ORS 656.591(1), and under ORS 656.591(2):

> "Any sum recovered by the paying agency in excess of the expenses incurred in making such recovery and the amount expended by the paying agency for compensation, first aid or other medical, surgical or hospital service, together with the present worth of the monthly payments of compensation to which such worker or other beneficiaries may be entitled under ORS 656.001 to 656.794, shall be paid such worker or other beneficiaries."

Whether the worker or the paying agency proceeds against the third party, it appears that the effect on the worker and on the paying agency is the same: the paying agency is repaid what it has paid out as of the time of recovery and may retain the present worth of estimated future expenditures. Certainly the decision of the paying agency to pursue the claim cannot affect the worker's rights to medical services: the effect on the worker and the paying agency is the same regardless of who pursues the claim, the election of the worker to pursue it cannot affect his right to medical services under ORS 656.245.

As we view the statutory scheme, its primary function and purpose is to shift to the wrongdoer, at least in part, the cost of compensating the injured worker, giving both the paying agency and the worker some benefit from the third-party claim recovery. It would not be consistent with that scheme to terminate the worker's right to have paid his medical expenses incurred after the recovery; neither would it be consistent with the remedial purpose of the Act to make the worker whole.[5]

---

[5] As Larson has said generally, the theory of third-party recovery is to shift liability to the actual wrongdoer when that objective can be achieved without interfering with the overriding social policy of making the injured worker whole:

> "The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer. As mentioned

■     Finally, it is explicit in the statutory scheme that receipt of proceeds of the third-party recovery by the claimant does not preclude him from receiving other benefits to which he may be entitled. ORS 656.593(2) provides:

> "The amount retained by the worker or the beneficiaries of the worker shall be in addition to the compensation or other benefits to which such worker or beneficiaries are entitled under ORS 656.001 to 656.794."

"Compensation" includes medical services. ORS 656.005(9).[6] In other words, the amount of the third-party recovery turned over to the worker (his minimum share plus any excess over the amount retained by the paying agency) is in addition to the medical services to which claimant is entitled under ORS 656.245. We conclude that neither the fact of election nor receipt of a third-party recovery, in whatever amount, terminates a worker's entitlement to medical benefits under ORS 656.245.

It remains to determine the effect of SAIF's failure to withhold any amount as its estimate of the present value of reasonably anticipated future expenditures for compensation and other costs. Under ORS 656.580(2), the paying agency has a lien against the cause of action against the third party, with priority over all other claims except the cost of the recovery. The claim may not be settled without the consent of the paying agency. ORS 656.587. Whether the claimant or the paying agency maintains the action, the paying agency is given a lien for its share of the proceeds,

---

at the close of the preceding chapter, every mature loss-adjusting mechanism must look in two directions: it must make the injured person whole, and it must also seek out the true wrongdoer whenever possible. While compensation law, in its social legislation aspect, is almost entirely preoccupied with the former function, it is not so devoid of moral content as to overlook the latter. It should never be forgotten that the distortions of our old-fashioned fault concepts that have been thought advisable for reasons of social policy are exclusively limited to providing an assured recovery for the injured person; they have never gone on — once the injured person was made whole — to change the rules on how the ultimate burden was borne." 2A Larson, Workers' Compensation Law, § 71.10 (1982).

[6] ORS 656.005(9) provided:

" 'Compensation' includes all benefits, including medical services, provided for a compensable injury to a subject worker or the worker's beneficiaries by a direct responsibility employer or the State Accident Insurance Fund pursuant to this chapter."

consisting of two parts: (1) the amount of its accrued expenditures for compensation, including medical expenses; and (2) the present value of estimated future expenditures for compensation (including medical expenses). ORS 656.593(1)(c). Any excess amount must be paid to the claimant, and in the event of a conflict about how much is retained by the paying agency, the Board resolves the dispute. ORS 656.593(1)(d).

■        Under the statute, retention of the proceeds to pay its estimated future expenditures appears to be mandatory:

> "The paying agency *shall* * * * *retain* the balance of the recovery * * * to the extent that it is compensated for the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim * * *." ORS 656.593(1)(c). (Emphasis supplied.)

However, given the overall statutory scheme relating to third-party claims, under which the paying agency is given a lien on the cause of action and on the proceeds, we believe that the most reasonable construction of the foregoing language is that the paying agency must retain the estimated amounts for the stated purposes or lose its lien on the proceeds.

Here, SAIF did not retain any part of the proceeds to secure the tag end portion of its right to recoupment, and having turned the entire balance of the proceeds over to claimant, SAIF gave up its rights relating to future expenditures. The statutory scheme appears to limit the paying agency's right to reimbursement to the retained fund; there is no provision permitting the paying agency to claim reimbursement from the worker any other way. Accordingly, if the paying agency pays over the fund, it also gives up its right to reimbursement for those future expenses.[7]

■        In essence, SAIF's position is that it gave up its right to a security for future expenditures in exchange for

---

[7] We recognize that there is an apparent anomaly in holding that the claimant is entitled to payment of his medical expenses, notwithstanding his successful third-party claim, and permitting the paying agency to reimburse itself from funds retained for that purpose under ORS 656.593(1)(c). The statutory scheme, however, must be harmonized to the extent possible, and we believe the lien theory comes as close as possible to making sense in the overall scheme.

claimant's assuming all future medical costs. The insurer, however, was not authorized to make such an arrangement, because the retention of a reserve is the extent of its right to reimbursement from the proceeds. Although it may be tempting to say that the worker must pay for his medical expenses (at least to the extent of the balance he received), to permit SAIF to make that kind of arrangement conflicts with the right of the worker to have the amount of retainage (*i.e.,* the amount that the paying agency may use to pay future expenses) either agreed to by him or determined by the Board. ORS 656.593(1)(d). Among other things, the paying agency's obligations for medical expenses may exceed the amount retained; here, SAIF purported to avoid *all* liability for those expenses by retaining nothing.

For the foregoing reasons, we conclude that the Board properly required SAIF to pay the medical services bill.

Affirmed.