Argued and submitted October 10, 1994, CA A65075 reversed and remanded;
CA A68732 affirmed January 4, 1995

Linda BIRD,
*Respondent,*

*v.*

NORPAC FOODS, INC.,
an Oregon cooperative,
dba Stayton Canning Company,
*Appellant,*

Donald Gale MORELAND,
an individual,
*Defendant.*

(850500C; CA A65075 (Control))

OREGON INSURANCE GUARANTY
ASSOCIATION,
an association,
and Norpac Foods, Inc.,
dba Stayton Canning Company,
a cooperative, and Donald Moreland,
*Respondents,*

*v.*

Linda BIRD,
*Appellant,*

AMERICAN MOTORISTS INSURANCE
COMPANY,
an Illinois corporation,
and Farmers Insurance Company of Oregon,
an Oregon Corporation,
*Defendants.*

(C900682CV; CA A68732)
(Cases Consolidated)

888 P2d 118

John L. Langslet argued the cause for appellant Norpac Foods, Inc. With him on the briefs in CA A65075 were Michael G. Harting and Martin, Bischoff, Templeton, Langslet & Hoffman.

John E. Uffelman argued the cause and filed the brief in CA A65075 for respondent Linda Bird.

John E. Uffelman argued the cause and filed the briefs in CA A68732 for appellant Linda Bird.

John L. Langslet argued the cause for respondents Oregon Insurance Guaranty Association, Norpac Foods, Inc., and Donald Moreland. With him on the brief in CA A68732 were Michael G. Harting and Martin, Bischoff, Templeton, Langslet & Hoffman.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

These two consolidated appeals involve contradicting dispositions that present the same question: Where the Oregon Insurance Guaranty Association (OIGA) has assumed the rights and responsibilities of an insolvent insurer under ORS 734.510 *et seq*, and a plaintiff obtains a personal injury judgment against a defendant insured by that insolvent insurer, must the judgment be deemed satisfied to the extent the plaintiff has received workers' compensation and uninsured motorist benefits for the same injury? Because we answer that question in the affirmative, we reverse in the first appeal and affirm in the second.

In 1983, plaintiff Linda Bird was injured in the course of her employment when the car she was driving collided with a car driven by Donald Moreland, who was in the course of his employment with Norpac Foods, Inc. Bird filed a workers' compensation claim based on her injuries and collected $84,607.84 in benefits from her employer's workers' compensation insurer, American Motorists Insurance Company (AMIC). She also filed an uninsured motorist claim against her own motor vehicle insurer, Farmer's Insurance Company of Oregon, and ultimately collected $5,664.49 on that claim.[1]

Bird also filed a personal injury claim against Moreland and Norpac. At the time of the accident, Norpac and Moreland, as its agent, were insured by Mission Insurance Company. Mission was later declared insolvent, and OIGA assumed its rights and responsibilities vis-a-vis Moreland and Norpac, including the defense of Bird's action, pursuant to ORS 734.570(1) and (2). A jury awarded Bird damages of $104,742.26, including $94,742.26 in economic damages and $10,000 in non-economic damages; the trial court entered judgment against Norpac and Moreland, jointly and severally, in that amount.

Norpac and Moreland, at OIGA's instigation, filed a motion for an order directing satisfaction of the judgment. In that motion, they argued that, because OIGA had assumed

---

[1] Moreland qualified as an uninsured motorist under Bird's policy because his motor vehicle insurer had been declared insolvent.

the responsibilities of their insolvent insurer and was ultimately responsible for paying the judgment against them, the judgment was subject to ORS 734.640. That statute provides:

"(1) Any person who has a claim under an insurance policy against an insurer other than an insolvent insurer which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy.

"* * * * *

"(3) Any recovery under ORS 734.510 to 734.710 from [OIGA] shall be reduced by the amount of any recovery pursuant to subsection (1) * * * of this section."

Under that provision, they argued, Bird's judgment must be offset and deemed satisfied to the extent of her workers' compensation and uninsured motorist recoveries.[2]

Bird opposed the motion, arguing, among other things, that her claim did not qualify as a "covered claim" and that her workers' compensation recovery did not qualify as "a claim under an insurance policy," as those terms are used in ORS 734.640(1). The trial court denied the motion:

"ORS 734.640 is a claim priority matter and has nothing to do with the plaintiff in this matter. It talks about 'any recovery under 734.514 to 734.710' and I do not believe that 'covered claim under 734.510(4)(a)' has anything to do with the plaintiff in this case."

Norpac appealed that denial. ORS 19.010(c). That appeal (CA A65075) is the first of the consolidated appeals before us. In filing the appeal, Moreland was not named as an appellant. Because the limitations period for appealing that decision has long since elapsed, the trial court's decision is final and unappealable with respect to Moreland.

While Norpac's appeal was pending, OIGA filed a complaint against Bird, AMIC and Farmer's in its own name, as well as Norpac's and Moreland's, seeking a declaratory judgment that OIGA, Norpac, and Moreland had no duty to

---

[2] In their motion for an order directing satisfaction, Norpac and Moreland alleged that AMIC and Farmers had paid Bird more than $103,000. All parties now agree that the total amount paid to Bird by AMIC and Farmers was $90,272.33. To avoid confusion over amounts that are not in dispute, OIGA, Norpac, and Moreland have since paid the undisputed portion of the judgment, $15,014.33, to Bird, leaving only the $90,272.33 at issue.

pay Bird's judgment. As its insureds had argued in their motion to direct satisfaction, OIGA alleged that, under the OIGA statutes, and ORS 734.640 in particular, Bird's workers' compensation and uninsured motorist recoveries must be offset against the judgment in her personal injury action.

Bird moved to dismiss, arguing, *inter alia*, that another action involving the same claim was pending (*i.e.*, Norpac's appeal) and that the present action was barred under principles of *res judicata* and collateral estoppel. Bird also moved for summary judgment, asserting the same substantive arguments that had prevailed against Norpac's and Moreland's motion to direct satisfaction. OIGA filed a cross-motion for summary judgment. The trial court denied Bird's motions, granted OIGA's cross-motion for summary judgment, and entered a judgment declaring that Bird's $104,742.26 judgment against Norpac and Moreland should be offset by the $90,272.33 she had recovered from AMIC and Farmer's. Bird appeals that judgment in CA A68732.

We first address Norpac's appeal. Norpac argues that the trial court's denial of its motion to satisfy is contrary to ORS 734.640(3) and, in particular, to the Supreme Court's interpretation of that provision in *Carrier v. Hicks*, 316 Or 341, 851 P2d 851 (1993). Bird counters that the denial of satisfaction was proper for a number of reasons. She argues, variously, that: (1) *Carrier v. Hicks, supra,* is inapplicable to her workers' compensation recovery; (2) Norpac failed to establish that Bird's personal injury claim was a "covered claim" under the OIGA statutes; and (3) the satisfaction procedure invoked by Norpac was not available under the circumstances. We consider, and reject, each argument in turn.

The relevant statutes, which are set out at ORS 734.510 to ORS 734.710, provide a scheme for guaranteeing payment on claims falling within the coverage of insurance policies issued by insurers that are later declared insolvent. Under those statutes, OIGA, an association of insurers doing business in Oregon, collects funds from its members, and uses those funds to pay certain insurance claims, *i.e.*, "covered claims," filed against insurers that have been declared insolvent. OIGA is required to:

"(1) * * * pay *covered claims* existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency * * *.

"(2) Be the insurer to the extent of the association's obligation on the *covered claims* and to such extent have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." ORS 734.570. (Emphasis supplied.)

A "covered claim" is

"an unpaid claim * * * that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable * * *." ORS 734.510(4)(a).

The term "covered claim" does not include any amount owed to an insurer "as subrogated recoveries or otherwise." ORS 734.510(4)(b).

██ The statutory scheme recognizes that a person who has a claim under a policy issued by an insolvent insurer might also have claims, based on the same accident or occurrence, against insurance policies issued by solvent insurers. Thus, ORS 734.640 ensures that, in those situations, OIGA funds will not be used "until all other available insurance sources of payment have been used up." *Carrier v. Hicks, supra,* 316 Or at 348. In particular, under ORS 734.640(1), claimants are required to exhaust their remedies under policies issued by solvent insurers, by filing any available "claim[s] under an insurer policy * * * which would also be a covered claim," before they turn to OIGA for payment. In addition, any recovery from OIGA must be reduced by the amount recovered as a result of those claims. ORS 734.640(3).

Norpac argues, and Bird does not dispute that, under the analysis of *Carrier v. Hicks, supra,* Bird's uninsured motorist recovery was obtained pursuant to a "claim under an insurance policy * * * which would also be a covered claim." Thus, subject to our disposition of Bird's alternative arguments, ORS 734.640(3) operates to reduce her judgment to that extent.

Whether her workers' compensation recovery was obtained pursuant to a "claim under an insurance policy" is a closer and more difficult question. The text of ORS 734.640 is unenlightening. Neither that section, nor the OIGA statutes generally, defines "insurance." Nor, obviously, does the statutory text refer expressly to workers' compensation coverage. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

Resort to context is more useful. The OIGA statutes expressly treat claims under workers' compensation policies as "claims arising out of 'insurance policies' " for some purposes. ORS 734.570(1) places a $300,000 cap on OIGA's liability for covered claims "[e]xcept for covered claims arising out of workers' compensation policies." In addition, we have assumed that workers' compensation claims are "claims arising out of an insurance policy" for purposes of ORS 734.510(4)(b)(B) and ORS 734.695.[3] *See Corvallis Aero Service v. Villalobos*, 81 Or App 137, 724 P2d 880 (1986).

■■ We are loath to hold that a workers' compensation policy is an "insurance policy" for purposes of some provisions of the Guaranty Association Act, but not for others, specifically ORS 734.640(1). When a term is used in various parts of the same statute, we must presume, absent clear indications to the contrary, that the legislature intended the same meaning throughout. *Pense v. McCall*, 243 Or 383, 389, 413 P2d 722 (1966); *Cherry Growers v. Emp. Div.*, 25 Or App 645, 649, 550 P2d 1250 (1976). We find no clear evidence of a contrary intent in the OIGA statutes or their legislative history, and, therefore, conclude that workers' compensation benefits, including those received by Bird in this case, are

---

[3] ORS 734.510(4)(b)(B) provides:

"(b) 'Covered claim' does not include:

"* * * * *

"(B) Any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogated recoveries or otherwise."

ORS 734.695 provides:

"The insured of an insolvent insurer shall not be personally liable for amounts due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise up to the applicable limits of liability provided by the insurance policy issued by the insolvent insurer."

recoveries obtained pursuant to "claims under insurance policies" under ORS 734.640.

We acknowledge, as Bird emphasizes, that our holding may, in particular cases, frustrate a stated purpose of the OIGA statutes: "to avoid financial loss to claimants or policyholders because of the insolvency of the insurer." ORS 734.520.[4] Under normal circumstances — *i.e.*, if Moreland's and Norpac's insurer, Mission, had remained solvent — Bird would have been entitled to retain a portion of the third-party judgment, even if that portion effectively duplicated her workers' compensation benefits, her counsel would have been compensated from that judgment, and the compensation carrier would have had a lien on the balance. ORS 656.593-(1)(a), (b) and (d).[5] By requiring a reduction "by the amount of any recovery" from other insurance, ORS 734.640(3) unambiguously requires a reduction by the *full* amount of such recovery, precluding such apportionment.[6]

---

[4] *Accord Carrier v. Hicks, supra,* in which the court noted the legislature's general intent to

"maximize[] protection to the insured of an insolvent insurer, up to the OIGA limits, *without intruding on the right of the injured person to recover damages to which he or she legally is entitled* * * *." 316 Or at 351. (Emphasis supplied.)

[5] ORS 656.576 to 656.596 allow a worker who receives a compensable on-the-job injury due to the negligence of a third person to seek damages from that person, and to collect workers' compensation benefits until such damages are actually recovered. ORS 656.593 provides that the proceeds of any damages recovered in such a third-party action

"(1) * * * shall be subject to a lien of the [workers' compensation insurer] for its share of the proceeds * * * and the total proceeds shall be distributed as follows:

"(a) Costs and attorney fees incurred shall be paid * * *.

"(b) The worker or the beneficiaries of the worker shall receive at least 33-1/3 percent of the balance of such recovery.

"(c) The [workers' compensation insurer] shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation, [etc.] * * *

"(d) The balance of the recovery shall be paid to the worker or the beneficiaries of the worker forthwith. * * *

"(2) The amount retained by the worker * * * shall be in addition to the compensation or other benefits to which such worker * * * [is] entitled under this chapter."

That statutory distribution expresses a legislative intent that both injured workers and workers' compensation insurers benefit from third-party recoveries. *SAIF v. Parker,* 61 Or App 47, 53, 656 P2d 335 (1982).

[6] Conversely, excluding workers' compensation benefits from the operation of

We appreciate that our construction of ORS 734.640 to encompass workers' compensation benefits means that plaintiffs in Bird's position may recover less because of an insurer's insolvency. However, given the text and context of the statute, we are unable to read it in a manner that avoids that result.

■ Bird next argues that, even if both her uninsured motorist and workers' compensation recoveries were obtained pursuant to "claims under an insurance policy," the judgment in her personal injury action was not a "covered claim" subject to ORS 734.640 because Moreland and Norpac were insured by insurers other than the insolvent Mission and they failed to exhaust that coverage. Bird asserts that ORS 734.640(1) requires such exhaustion of other coverage before OIGA can treat a judgment as a "covered claim" and invoke the statutorily prescribed offset.

Bird indiscriminately and improperly conflates two unrelated statutes. ORS 734.510(4) clearly and comprehensively defines "covered claims." Conversely, ORS 734.640(1) is a priority statute, limiting OIGA's obligation to pay "covered claims." That statute requires persons who have such claims to exhaust their remedies against other insurers before they seek a remedy from OIGA; it does not, however, impose any obligations on OIGA, including, for example, any obligation to investigate other insurance before processing a claim. Because Bird's claim fell squarely within ORS 734.510(4)'s definition of "covered claims," OIGA was entitled to treat it as such.

■ Bird next argues that, regardless of the operation of ORS 734.640, OIGA waived any right it may have had to an offset because it failed to request the offset *before* the entry of final judgment. She relies on ORS 18.580, which allows a

ORS 734.640 would subvert another fundamental policy of the OIGA statutes — that OIGA's funds are to be used only as a "last resort" to compensate claimants. *Carrier v. Hicks, supra,* 316 Or at 348-49. ORS 734.510(4)(b)(B) and ORS 734.695 bar AMIC, or any compensation carrier, from imposing a lien against monies OIGA pays to plaintiffs on third-party claims. *See Corvallis Aero Service v. Villalobos, supra.* Consequently, if Bird's judgment were not reduced by the amount of her compensation recovery, she would be entitled to retain not only the claimant's share of the third-party judgment, as per ORS 656.693(1)(a), but also AMIC's putative lien share and could, thus, realize a double recovery *at OIGA's expense* in contravention of the statutory scheme.

court to deduct certain collateral benefits received by a party awarded damages in a personal injury action "before the entry of final judgment." This argument fails because OIGA's entitlement to offset derives from ORS 734.640, and not, generically, from ORS 18.580. *Hallford v. Smith*, 120 Or App 57, 64, 852 P2d 249 (1993); *State v. Vandepoll*, 118 Or App 193, 198, 846 P2d 1174 (1993). Although OIGA can employ the procedures described at ORS 18.580 to effect its right, it is not obliged to employ those procedures as the exclusive means for doing so.

In a related sense, Bird argues that OIGA cannot formalize its right to a reduction through the procedure it *did* choose to employ, *i.e.*, satisfaction of judgment pursuant to ORS 18.410. She interprets ORS 18.410(2)(a)(C), which requires persons moving for a satisfaction of judgment to specify "the date or dates and amounts of any payments *on the judgment*," as an indication that a judgment may be satisfied only if the plaintiff has received payments on the judgment. She argues that, because her uninsured motorist and workers' compensation recoveries were not payments "on the judgment" in her personal injury action, those recoveries cannot be deemed to satisfy her judgment against Norpac and Moreland.

■ We disagree. ORS 18.410 provides a procedure for "obtain[ing] a satisfaction * * * when any [judgment debtor] is unable to obtain a satisfaction." Under ORS 18.400, a satisfaction results "when any judgment is paid *or satisfied*." (Emphasis supplied.) The use of the disjunctive indicates that a judgment may be satisfied by means other than direct payment. Here, because ORS 734.640 allows OIGA to reduce Bird's judgment against Norpac and Moreland by her uninsured motorist and workers' compensation recoveries, the judgment may be deemed satisfied to the extent of those recoveries.[7]

In sum, with respect to Norpac's appeal, we conclude that the trial court erred in denying Norpac's motion to direct satisfaction. Accordingly, we reverse that order.

---

[7] A similar "satisfaction by reduction" scheme is described at ORS 18.510(3)(c), where payments made prior to judgment, and therefore, not "on the judgment," may be applied to the judgment in partial satisfaction thereof.

That disposition largely disposes of Bird's appeal of OIGA's declaratory judgment action. In adjudicating Norpac's appeal, we considered and rejected every substantive argument Bird advances against the subsequent judgment. In addition to her substantive arguments, Bird contends that OIGA's claim for declaratory relief was barred either by *res judicata* (claim preclusion) or collateral estoppel (issue preclusion), deriving from the court's prior denial of Norpac's and Moreland's motion to direct satisfaction. Our disposition of Norpac's appeal deprives the prior adjudication of preclusive effect as to Norpac. *See Community Bank v. Vassil*, 280 Or 139, 143-44, 570 P2d 66 (1977). Thus, even if we were to assume, as plaintiff argues, that OIGA and Norpac were in privity so that OIGA should have been bound by the prior denial, the trial court's rejection of Bird's issue preclusion and claim preclusion defenses was not prejudicial.

A different analysis applies to Moreland. As noted, Moreland did not file a timely appeal from the trial court's order denying satisfaction. Accordingly, notwithstanding our reversal on Norpac's appeal, that order was, and is, final and preclusive as to Moreland.

Nonetheless, we do not address plaintiff's preclusion arguments with respect to Moreland because any decision we might render would not "have a practical effect on or concerning the rights of the parties." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). This is so because, as a matter of law, our holding that the judgment has been properly satisfied as to Norpac in the amount of $90.272.33 also operates to satisfy the joint and several judgment against Moreland to the same extent. *See Starr v. Heckathorne*, 270 Or 238, 527 P2d 401 (1974); *Savelich Logging v. Preston Mill Co.*, 265 Or 456, 509 P2d 1179 (1973). Accordingly, plaintiff's claim and issue preclusion arguments with respect to Moreland, while justiciable, are moot.

Order denying Norpac Foods, Inc., and Donald Moreland's motion to direct satisfaction in CA A65075 is reversed and remanded; the judgment in CA A68732 is affirmed.