Argued and submitted May 7, 1996, decision of Court of Appeals affirmed and judgment of circuit court reversed in CA A65075; appeal in CA A68732 dismissed as moot March 20, 1997

Linda BIRD,
*Petitioner on Review,*

*v.*

NORPAC FOODS, INC.,
an Oregon cooperative,
dba Stayton Canning Company,
*Respondent on Review,*

*and*

Donald Gale MORELAND,
an individual,
*Defendant.*

(CC 850500C; CA A65075 (Control))

OREGON INSURANCE GUARANTY ASSOCIATION,
an association, and Norpac Foods, Inc.,
dba Stayton Canning Company,
a cooperative, and Donald Moreland,
*Respondents on Review,*

*v.*

Linda BIRD,
*Petitioner on Review,*

*and*

AMERICAN MOTORISTS INSURANCE COMPANY,
an Illinois corporation,
and Farmers Insurance Company of Oregon,
an Oregon Corporation,
*Defendants.*

(C900682CV; CA A68732)
(SC S42113)

934 P2d 382

John E. Uffelman, Beaverton, argued the cause and filed the briefs for petitioner on review.

John L. Langslet, of Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, argued the cause for respondents on review. With him on the brief was Julie K. Bolt.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## VAN HOOMISSEN, J.

■ The dispositive issue presented in these two consolidated appeals, under the Oregon Insurance Guaranty Association (OIGA) statutes, ORS 734.510 *et seq*, is as follows: When OIGA has assumed all of the rights, duties, and obligations of an insolvent insurer pursuant to ORS 734.570, and a plaintiff obtains a personal injury judgment against a defendant insured by that insolvent insurer, must the judgment be deemed satisfied to the extent that the plaintiff has received workers' compensation benefits from a solvent insurer for the same injury? The Court of Appeals answered that question in the affirmative. *Bird v. Norpac*, 132 Or App 349, 888 P2d 118 (1995). For the reasons that follow, we affirm.

We take the undisputed facts from the Court of Appeals' opinion. Plaintiff Bird was injured in the course of her employment when the car that she was driving collided with a car driven by Moreland, who was in the course of his employment with Norpac Foods, Inc. (Norpac), at the time of the accident. Bird filed a workers' compensation claim based on her injuries and collected $84,607.84 in benefits from her employer's workers' compensation insurer, American Motorists Insurance Company (AMIC). She also filed an uninsured motorist (UM) claim against her own motor vehicle insurer, Farmers Insurance Company of Oregon (Farmers), and collected $5,664.49 on that claim.[1]

Bird later filed a personal injury claim against Norpac and Moreland. At the time of the accident, Norpac (and Moreland as its agent) was insured by Mission Insurance Company (Mission). Mission later was declared insolvent, and OIGA assumed Mission's rights, duties, and obligations *vis-á-vis* Norpac and Moreland, including the defense of Bird's action. ORS 734.570.[2] A jury awarded Bird damages of

---

[1] Because Moreland's motor vehicle insurer had been declared insolvent, he qualified as an uninsured motorist under Bird's policy.

[2] ORS 734.570 provides, in part:

"[The Oregon Insurance Guaranty Association] shall:

"(1) Be obligated to pay covered claims existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency. * * *

$104,742.26, including $94,742.26 in economic damages and $10,000 in noneconomic damages, and the trial court entered judgment against Norpac and Moreland, jointly and severally, in that amount.[3]

After the judgment was final, at OIGA's instigation, Norpac and Moreland filed a motion for an order directing satisfaction of the judgment. They argued that, because OIGA had assumed the obligations of Mission and ultimately was responsible for paying Bird's judgment against them, pursuant to ORS 734.640,[4] the judgment must be deemed satisfied to the extent of her workers' compensation and UM recoveries. Bird opposed the motion, arguing, among other things, that her workers' compensation claim was neither a "claim under an insurance policy" nor a "covered claim" within the meaning of ORS 734.640(1). She further argued that Norpac and Moreland's post-judgment motion for satisfaction was untimely. The trial court denied the motion. Norpac, but not Moreland, appealed. That appeal (CA A65075) is the first of the two appeals consolidated here. With respect to Norpac's appeal, the Court of Appeals reversed. *Bird*, 132 Or App at 359. We allowed Bird's petition for review in that case.

---

"(2) Be the insurer to the extent of the association's obligation on the covered claims and to such extent have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."

[3] OIGA has paid Bird $15,014.33, the difference between her personal injury judgment and the amount in dispute on review.

[4] ORS 734.640 provides, in part:

"(1) Any person who has a claim under an insurance policy against an insurer other than an insolvent insurer which would also be a covered claim against an insolvent insurer must first exhaust the remedies under such policy.

"* * * * *

"(3) Any recovery under ORS 734.510 to 734.710 from the association shall be reduced by the amount of any recovery pursuant to subsection (1) and (2) of this section."

ORS 734.510(4) provides, in part:

"(a) 'Covered claim' means an unpaid claim, including a claim for unearned premiums, that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable * * *."

While Norpac's appeal in CA A65075 was pending, OIGA, Norpac, and Moreland filed a complaint against Bird, AMIC, and Farmers, seeking a declaratory judgment that OIGA, Norpac, and Moreland had no duty to pay Bird's judgment in CA A65075 because of the offset provision in ORS 734.640. Bird moved to dismiss, arguing, among other things, that another action involving the same claim—namely, Norpac's appeal—was pending, and that the present action was barred under principles of claim preclusion and issue preclusion. Bird also moved for summary judgment. OIGA filed a cross-motion for summary judgment. The trial court denied Bird's motions and granted summary judgment in favor of OIGA, Norpac, and Moreland, ruling that Bird's recoveries from AMIC and Farmers must be applied to reduce the judgment against Norpac and Moreland. Bird appealed that judgment. That appeal (CA A68732) is the second of the appeals consolidated here. The Court of Appeals affirmed the declaratory judgment in favor of OIGA, Norpac, and Moreland. *Bird*, 132 Or App at 360. We allowed Bird's petition for review.

■■■ This case requires us to interpret the OIGA statutes, ORS 734.510 *et seq*, particularly ORS 734.640(1). In interpreting a statute, this court's role is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do that, the court first examines both the text and context of the statute. In that first level of analysis, the text of the statutory provision itself is the best evidence of the legislature's intent and provides the starting point for interpretation. *Ibid.* As part of the text, the court considers its prior cases interpreting the statute. *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (when this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment). Also at the first level of analysis, the court considers the context of the statute at issue, which includes other provisions of the same statute and other related statutes. If the legislature's intent is clear from the above-described inquiry, further inquiry is unnecessary. *Id.* at 611.

The text of ORS 734.640(1) does not clearly reveal whether it applies to a workers' compensation recovery. Neither does it indicate whether a claim for workers' compensation benefits is a "claim under an insurance policy" under ORS 734.640(1).

This court had occasion in *Carrier v. Hicks*, 316 Or 341, 851 P2d 851 (1993), to interpret the OIGA statutes generally and ORS 734.640 in particular in the context of an uninsured/underinsured motorist (UM/UIM) recovery. The plaintiff in *Carrier* brought a civil action to recover damages for personal injuries resulting from an automobile accident. The defendants' insurer became insolvent, and OIGA stepped in to defend the claim. The trial court granted the defendants' motion for summary judgment, on the grounds that the plaintiff had not exhausted the UM/UIM remedies of his own automobile insurance as required by ORS 734.640(1) and that the damages award he had received under the UM/UIM policy constituted a full recovery.

In interpreting the OIGA statutes, including ORS 734.640, the *Carrier* court stated that the legislature's central purpose was to create a guarantee association of insurers to accumulate and administer funds to pay for the defense of insureds whose insurer becomes insolvent and to pay claims of injured claimants whose claims would have been within the coverage of the insolvent insurer's policy. *Id.* at 345.[5] However, this court also noted that OIGA's protections have significant restrictions. *Id.* at 348. Important in the total OIGA scheme is that OIGA funds, generated by Oregon income tax credits, not be accessible until all other available insurance sources have been used up. *Ibid.* The aim and effect of the OIGA statutes is to make OIGA "the carrier of

---

[5] ORS 734.520 provides:

"The purpose of ORS 734.510 to 734.710 is to provide for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, to provide an association to assess the cost of such protection among insurers and to assist in the liquidation of insurers as provided in this chapter."

ORS 734.530 provides that the OIGA statutes shall be liberally construed to effect the purposes of ORS 734.520.

last resort." *Id.* at 347. Claimants must exhaust their remedies against all other insurers before they can claim OIGA funds. *Id.* at 351. Whether the OIGA statutes in general, and ORS 734.640 in particular, require an offset against a personal injury judgment by the amount of a *workers' compensation* recovery was not specifically addressed or answered in *Carrier*.[6]

Bird's first argument is anchored in *Carrier's* holding that a claimant must not merely file or recover on a UM/UIM claim, but also must "exhaust" the limits of the UM/UIM policy, before the claimant can assert a claim against OIGA or its insured. *Id.* at 350.[7] From that holding, she posits that a claim against an insurance policy of a solvent insurer must be against a policy that has "monetary or durational" limits. She asserts that, because workers' compensation insurance has neither monetary nor durational limits, it cannot be "exhausted" and, therefore, it cannot meet the requirements expressed in *Carrier*. Bird's argument is unpersuasive.

*Carrier* must be read within the context of the relationship between the OIGA statutes and the UM/UIM statutes. The *Carrier* court stated that the UM/UIM statutes were designed to allow a claimant injured by the negligence of an uninsured motorist to recover the same amount that the claimant would have been legally entitled to receive in a civil action for damages, had the negligent motorist been insured. *Id.* at 349. The court further noted that the OIGA statutes denied UM/UIM insurers the right to bring subrogation claims against the insured of the insolvent insurer or against OIGA, thus indicating that OIGA funds should "not be accessible or used until all other available insurance sources of payment have been used up." *Id.* at 348. The court concluded

---

[6] There was no dispute in *Carrier v. Hicks*, 316 Or 341, 851 P2d 851 (1993), that a claim against a solvent UM/UIM insurer is the type of claim that a claimant must "exhaust" before asserting a claim against OIGA or its insured. The question in *Carrier* was *how* a claimant was to satisfy that exhaustion requirement.

[7] *Carrier* was decided by this court after the consolidated cases before us were tried in the circuit courts. Bird acknowledges that this court's analysis in *Carrier* authorizes a reduction of her judgment by the amount of her UM recovery from Farmers on her own automobile policy. She argues, however, that no reduction should be made *in this case,* because of certain procedural theories that we shall discuss below, 325 Or at 67-70.

that, taken together, the OIGA statutes and the UM/UIM statutes "suggest that, if an injured claimant can receive *all damages to which he or she is legally entitled* from existing other UM or UIM insurance, the claimant would have no claim against either the insured of the insolvent insurer or against OIGA for the amounts within the OIGA coverage." *Id.* at 349 (emphasis in original). The court held that a claimant who recovers on a UM/UIM claim an amount less than the UM/UIM policy limits is deemed to have recovered that to which the claimant is "legally entitled," thereby barring any claim to recover damages against OIGA or its insured. *Id.* at 350.

However, it does not follow from that analysis that *only* claims against insurance policies that have monetary or durational limits are subject to the offset provision of ORS 734.640. That question was not before the *Carrier* court.

Bird next contends that her workers' compensation claim is not a claim "under an insurance policy." She argues that, instead, it is a *statutory* claim that requires her employer to compensate her for work-related injuries. *See* ORS 656.017(1).[8]

■    In this case, the insurance required by ORS 656.017(1) is provided by Bird's employer's workers' compensation insurer, AMIC. Thus, Bird's claim for workers' compensation is, in fact, a claim "under an insurance policy," within the meaning of ORS 734.640(1).

■    Bird also argues that her workers' compensation claim is not a "covered claim" within the meaning of ORS 734.640(1), because it did not "arise out of," nor was it "within," the coverage and limits of Mission's policy. ORS 734.510(4)(a). She maintains that OIGA may not reduce her judgment, because her workers' compensation claim is not

---

[8] ORS 656.017(1) provides:

"Every employer subject to this chapter shall maintain assurance with the director that subject workers of the employer and their beneficiaries will receive compensation for compensable injuries as provided by this chapter and that the employer will perform all duties and pay other obligations required under this chapter, by qualifying:

"(a)  As a carrier-insured employer; or

"(b)  As a self-insured employer as provided by ORS 656.407."

under an insurance policy (AMIC) that covers the same liability and risks that are covered by Mission's policy.

We perceive an ambiguity in ORS 734.640(1) in its first use of the word "claim." Specifically, it is unclear to us what relationship must exist between a "claim" under an insurance policy against a solvent insurer (AMIC) and a "covered claim" under an insurance policy against an insolvent insurer (Mission), such that the former must be exhausted before the latter may be brought against OIGA.

Although Bird's argument is plausible, it is more plausible that the legislature intended that the word "claim" refer simply to a generic assertion of a right to property or money arising out of a common injurious event.[9] Under that interpretation, any "claim" against a solvent insurer arising out of a particular injury, without regard to the operative facts or the source of the legal right that would entitle a claimant to a recovery, must be exhausted before that claimant may pursue a "covered claim" against an insolvent insurer arising out of the same injury. In light of the legislature's overarching goal of ensuring that OIGA remain the carrier of last resort, *Carrier*, 316 Or at 347, we conclude that Bird's claim for workers' compensation benefits is logically indistinguishable from a tort claim against a solvent insurer.

■ Various provisions of the OIGA statutes show that workers' compensation insurers participate fully in the OIGA scheme. Under ORS 734.510(7) and 734.570(3), for example, such insurers are "member insurers," who are required to pay assessments to cover OIGA's obligations. They are required to maintain their membership in OIGA as a condition of their authority to transact insurance in this state. ORS 734.550. If a workers' compensation insurer falls into insolvency, OIGA steps in to pay covered claims arising out of the insolvent insurer's policy. ORS 734.570(1) and (2). In that circumstance, OIGA, filling the shoes of the insolvent workers' compensation insurer, is entitled to the same priority

---

[9] *Black's Law Dictionary*, 247 (6th ed 1990), defines "claim," in part, as follows:

"To demand as one's own or as one's right; to assert; to urge; to insist. A cause of action. Means by or through which claimant obtains possession or enjoyment of privilege or thing. Demand for money or property as of right, *e.g.*, insurance claim."

protection of ORS 734.640(1) as any other type of insolvent member insurer. ORS 734.640(2)(b), which requires that, when a claimant has claims against multiple guaranty organizations, "[r]ecovery on workers' compensation claims shall first be sought from whichever organization serves the residence of the claimant," provides clear contextual support for the conclusion that workers' compensation insurers are entitled to the priority protection of ORS 734.640(1). Given that protection, it is reasonable to conclude that the legislature intended for claims against solvent workers' compensation insurers to be within the scope of the exhaustion requirements of ORS 734.640(1).[10]

Bird further argues that to require a reduction in her workers' compensation recovery would violate the stated purpose of the OIGA statutes to avoid "financial loss" to claimants because of the insolvency of an insurer, ORS 734.520, as well as violate the third party recovery provisions of the workers' compensation laws, ORS 656.576 *et seq*, which allow a claimant to keep a portion of the proceeds of a tort recovery "in addition to the compensation or other benefits to which the worker * * * [is] entitled." ORS 656.593(2).[11] Bird's argument is unpersuasive.

■ ORS 656.593(1) generally provides that, when a worker elects to bring a tort action for damages against a third party, "[t]he proceeds"[12] of any damages recovered in that action shall be distributed as follows: first, costs and

---

[10] Moreover, the legislature knows how to exempt certain kinds of insurance from the provisions of ORS 734.510 *et seq*. *See* ORS 734.540 (exempting several kinds of direct insurance from OIGA coverage).

[11] ORS 656.593(2) provides:

"The amount retained [in a third party action] by the worker or the beneficiaries of the worker *shall be in addition to* the compensation or other benefits to which the worker or beneficiaries are entitled under [chapter 656]." (Emphasis added.)

[12] Under ORS 656.593(1), Bird would be entitled to a portion of "the proceeds" of any damages recovered in her tort action against Norpac and Moreland. "The proceeds" retained by a worker under ORS 656.593(1) are not "compensation," but are "in addition to" compensation. ORS 656.593(2). Under 656.593(2), the "amount retained" by Bird in the tort action is her proper share of "the proceeds," not of her damages. ORS 656.593 does not guarantee that all of Bird's judgment for damages will be reduced to "proceeds."

attorney fees are paid; second, the worker receives 33 ⅓ percent of the balance of the recovery; third, the paying agency receives the balance of the recovery based on its statutory lien, ORS 656.580(2), but only up to the amount of compensation, medical, and various other costs paid out or reasonably expected in the future; and, fourth, the balance of the recovery, if any, goes to the worker. Under that formulation, and but for Mission's insolvency, Bird would have retained a larger portion of her personal injury award than she would under a calculation that requires an offset for her UM and workers' compensation recoveries.

In *Carrier*, 316 Or at 348, this court stated that the OIGA law "provides protection that is similar but not identical to the protection claimants and insureds would have had if the liability insurer had not become insolvent." Although that passage in *Carrier* was in the context of UM/UIM coverage, we believe that it is equally applicable to workers' compensation coverage. Bird loses the amount that ORS 656.593(2) would have permitted her to retain from "the proceeds" of her third-party action if Mission was solvent. But, because of Mission's insolvency, a smaller amount of "proceeds" is available. Hence, Bird does not lose anything that ORS 656.593(1) entitles her to keep.

By protecting claimants and insureds from "financial loss" resulting from the insolvency of insurers, the legislature did not thereby necessarily intend that claimants receive the exact recovery that they would have received from a solvent insurer, to the detriment of the legislative goal of making OIGA the insurer of "last resort."

We conclude that the legislature intended to require a claimant to exhaust a workers' compensation claim against a solvent insurer before pursuing a claim against OIGA and, therefore, that Bird's personal injury judgment in this case must be offset by the amount of her workers' compensation recovery.

■ Bird next argues that ORS 734.640 imposes a duty *on OIGA* to require its insureds, here Norpac and Moreland, to exhaust their insurance coverage with their other solvent liability insurers. We disagree. ORS 734.640 does not impose an obligation on OIGA either to investigate other insurance

before processing a claim or to direct its insureds to exhaust their other insurance.

■ Finally, Bird argues that the offset provision of ORS 734.640(3) violates the collateral source rule, which provides generally that, if an injured party receives compensation from a source independent of the tortfeasor, it should not be deducted from the injured party's recovery from the tortfeasor. *See Reinan v. Pacific Motor Trucking Co.*, 270 Or 208, 527 P2d 256 (1974) (holding that evidence of collateral benefits is inadmissible). We are not persuaded. The collateral source rule is a common-law creation of this court that the legislature is entitled to alter or abolish, in whole or in part. Here, the legislature's specific and unambiguous direction in ORS 734.640(3), that any recovery under ORS 734.510 *et seq* from OIGA shall be offset by certain other recoveries overrides whatever impact the collateral source rule otherwise might have in these circumstances.

In summary, the Court of Appeals correctly concluded that, under ORS 734.640, Norpac and OIGA are entitled to offset Bird's workers' compensation recovery from her personal injury judgment.

■ We turn next to Bird's argument that, *even if* ORS 734.640 requires an offset by the amount of her workers' compensation and UM recoveries, OIGA's chosen method of obtaining that offset through the postjudgment mechanism of ORS 18.410 was untimely and, therefore, impermissible.[13]

---

[13] ORS 18.410 provides, in part:

"(1) This section establishes a procedure to obtain a satisfaction for a judgment for the payment of money when any person, against whom exists a judgment for the payment of money or who is interested in any property upon which any such judgment is a lien, is unable to obtain a satisfaction from a judgment creditor for any reason. The following apply to a procedure under this section:

"(a) The procedure and all filings, entries and other actions relating to the procedure are to be considered as a continuation of the original action in which the judgment was entered.

"* * * * *

"(2) A person described in subsection (1) of this section may request the court which gave the judgment to determine whether the judgment has been paid in full or to determine the amount necessary to satisfy the judgment at a specific time in the future. To make such request, the person must do all of the following:

Bird notes that OIGA's offset claims in *Carrier* and *Mazorol v. Coats*, 316 Or 367, 852 P2d 178 (1993), were asserted in pretrial motions for summary judgment. Although ORS 734.640(3) states that any recovery from OIGA "shall be reduced by the amount of any recovery" obtained pursuant to subsections (1) and (2) of that section, the OIGA statutes themselves are silent as to *how* OIGA may obtain that reduction.

Bird interprets ORS 18.410(2)(a)(C) to mean that the postjudgment procedure for obtaining satisfaction of judgment is appropriate only in a case in which the judgment creditor has received payments "on the judgment." She argues that, because her workers' compensation and UM recoveries are not payments on her personal injury judgment against Norpac and Moreland, they cannot be used to reduce her recovery from OIGA. We disagree.

Payment on a judgment is not the sole means of satisfying a judgment. ORS 18.410(2)(a)(C) states only that, *if* "any payments on the judgment" have been received, then those amounts must be set forth in the affidavit. ORS 18.410 does not state that it applies only when a party has received direct "payments on the judgment." Also, subparagraph (F) of ORS 18.410(2)(a) provides that a party seeking satisfaction of a judgment must provide the court with "[a]ny other information necessary or helpful to the court in making its determination." Such information would include any amounts by which the judgment should be satisfied that are not "payments on the judgment."

In the alternative, Bird argues that ORS 18.410 is not a proper mechanism for obtaining an offset here because, by its terms, it allows only a person "against whom exists a judgment for the payment of money" to obtain a satisfaction of judgment. Bird asserts that, under ORS 734.640, only

"(a) File a motion with the court accompanied by an affidavit setting forth all the following, to the extent known to the person:

"* * * * *

"(C) The date or dates and amounts of any payments on the judgment.

"* * * * *

"(F) Any other information necessary or helpful to the court in making its determination."

OIGA, but not Norpac, is entitled to an offset and, because OIGA is not a person "against whom exists a judgment," ORS 18.410 may not benefit OIGA. The premise underlying Bird's argument is that Norpac and Moreland continue to be *personally* liable to her for the full amount of her personal injury judgment, regardless whether OIGA is entitled to an offset. We find Bird's argument unpersuasive.

In *Mazorol*, this court affirmed a trial court's grant of summary judgment in favor of an OIGA-insured defendant on the ground that, because the plaintiff had not exhausted his UM coverage against a solvent insurer, he had not exhausted his remedies as required by ORS 734.640(1). 316 Or at 369. OIGA was not a party to that action. Implicit in the holding of *Mazorol* was the premise that ORS 734.640(3) entitles a tortfeasor covered by OIGA, and not OIGA alone, to the benefit of an offset. If the defendant in *Mazorol* was entitled to summary judgment on the basis of ORS 734.640, it follows that Norpac is entitled to satisfaction of judgment here for the same reason.

The foregoing result is consistent with the wording of ORS 734.640(3), which simply requires that "[a]ny recovery" under the OIGA statutes from OIGA shall be reduced by the amount of any recovery pursuant to subsections (1) and (2) of ORS 734.640, without reference to *who* may assert the right to a reduction. That result also is consistent with the purpose of the OIGA statutes to avoid financial loss to "policyholders." ORS 734.520. Were we to hold that a policyholder of an insolvent insurer cannot claim entitlement to an offset on his or her own behalf, that purpose would be defeated. Accordingly, we hold that a postjudgment motion to direct satisfaction of judgment under ORS 18.410 is a proper mechanism through which OIGA, on behalf of its insureds, may obtain a reduction pursuant to ORS 734.640(3).

Bird further argues that ORS 18.580 provided OIGA's sole procedure for obtaining an offset.[14] We find nothing in the text of ORS 18.580 to suggest that it provides the

---

[14] ORS 18.580 provides:

"(1) In a civil action, when a party is awarded damages for bodily injury or death of a person which are to be paid by another party to the action, and the

exclusive means of obtaining an offset for collateral benefits received. Therefore, we reject Bird's argument.

■ Bird next argues that the Court of Appeals lacked jurisdiction to award relief to Moreland, because he did not appeal the personal injury judgment.

ORS 19.130(1) provides:

"Upon an appeal, the court to which the appeal is made may affirm, reverse or modify the judgment or part thereof appealed from as to any or all of the parties joining in the appeal, and may include in such decision any or all of the parties not joining in the appeal, *except a codefendant of the appellant against whom a several judgment might have been given in the court below*; and may, if necessary and proper, order a new trial." (Emphasis added.)

Outside the workers' compensation context, an employee such as Moreland is jointly and severally liable for torts resulting from his or her own negligence. *Merchant v. Clark*, 225 Or 273, 357 P2d 541 (1960). Moreland was Norpac's codefendant. Thus, under ORS 19.130(1), the Court of Appeals lacked jurisdiction to award Moreland *direct* relief.

Nevertheless, although Moreland's failure to appeal the trial court's judgment makes it final and preclusive as to him, our holding that Norpac was entitled to an offset in the judgment by the amount of Bird's workers' compensation and UM recoveries means that Moreland's failure to appeal has no practical effect on him. Under principles of joint and several liability, satisfaction of the judgment as to Norpac as

party awarded damages or person injured or deceased received benefits for the injury or death other than from the party who is to pay the damages, the court may deduct from the amount of damages awarded, before the entry of final judgment, the total amount of those collateral benefits other than:

"(a) Benefits which the party awarded damages, the person injured or that person's estate is obligated to repay;

"(b) Life insurance or other death benefits;

"(c) Insurance benefits for which the person injured or deceased or members of that person's family paid premiums; and

"(d) Retirement, disability and pension plan benefits, and federal social security benefits.

"(2) Evidence of the benefits described in subsection (1) of this section and the cost of obtaining it is not admissible at trial, but shall be received by the court by affidavit submitted after the verdict by any party to the action."

joint tortfeasor operates to satisfy the judgment to the same extent as to Moreland. *See Starr v. Heckathorne*, 270 Or 238, 240, 527 P2d 401 (1974) (judgment creditor entitled to only one satisfaction).

Our holding with respect to CA A65075 renders the issues raised by Bird's appeal of the declaratory judgment action, CA A68732, moot, and we dismiss it on that ground.

We have considered every argument that Bird has made as to why her workers' compensation and UM recoveries should not be subject to the offset provisions of ORS 734.640. We are not persuaded by any argument not discussed in this opinion.

The decision of the Court of Appeals in CA A65075 is affirmed and the judgment of the circuit court in that case is reversed. The appeal in CA A68732 is dismissed as moot.